[Cite as *In re Z.G.*, 2016-Ohio-7636.]

STATE OF OHIO )  IN THE COURT OF APPEALS
)ss:  NINTH JUDICIAL DISTRICT
COUNTY OF WAYNE )

IN RE Z.G.

C.A. Nos. 16AP0039
16AP0041

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No. 2014 JUV-C 000703

DECISION AND JOURNAL ENTRY

Dated: November 7, 2016

SCHAFER, Judge.

{¶1} Michelle G. ("Mother") and James G. ("Father") have separately appealed from a judgment of the Wayne County Court of Common Pleas, Juvenile Division, that terminated their parental rights to their minor child, Z.G., and placed him in the permanent custody of Wayne County Children Services Board ("CSB"). This Court affirms.

I.

{¶2} Mother and Father are the married parents of Z.G., born on June 20, 2014. Each parent has a separate and significant history with children services. Mother has two other children, A.G. and J.G., that have been removed from her custody. A.G. was placed with the child's maternal grandmother and J.G. was placed with the child's biological father, Ronald H. Although Father is not J.G.'s biological father, J.G. was born during the marriage of Mother and Father, and Father was included in the case plan for J.G. as his stepfather. Father has seven

additional children with other women and does not have custody or current visitation with any of them.

**{¶3}** As part of the case plan for J.G., Mother and Father each completed psychological evaluations. Those examinations revealed significant concerns regarding the mental health and stability of each parent. As a result of those concerns, CSB requested that the local hospital notify the agency when Mother gave birth to Z.G.

**{¶4}** Within days of the child's birth, CSB filed a dependency complaint and obtained emergency temporary custody of him. In due course, the trial court adjudicated Z.G. to be dependent and granted temporary custody of the child to the agency. The trial court adopted a case plan that required the parents to follow the recommendations from the prior psychological evaluations, engage in mental health services, participate in intensive parenting services, and secure stable housing and employment. Mother was later required to complete an updated psychological evaluation.

**{¶5}** CSB filed a motion for permanent custody on November 18, 2015. Following a hearing, the trial court granted CSB's motion, terminating the parents' parental rights to Z.G. and placing the child in the permanent custody of the agency. Father timely appealed and assigned one error for review. Mother separately appealed. In lieu of a merit brief, Mother's attorney filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), in which she asserted that there were no errors occurring at trial meriting reversal on Mother's behalf. Mother was served with a copy of counsel's *Anders* brief, and this Court issued a magistrate's order affording Mother an opportunity to raise arguments after review of the *Anders* brief. Mother has not responded.

II.

**FATHER'S ASSIGNMENT OF ERROR**

THE TRIAL COURT ABUSED ITS DISCRETION BY FINDING THAT PERMANENT CUSTODY WAS IN THE BEST INTEREST OF Z.G.

{¶6} Father assigns error to the trial court's decision that permanent custody was in the best interest of Z.G. Based on the evidence presented, Father claims that the trial court abused its discretion in reaching that decision.

{¶7} A juvenile court's termination of parental rights and award of permanent custody to an agency must be supported by clear and convincing evidence. *In re C.W.*, 9th Dist. Summit Nos. 21809, 21811, 2004-Ohio-1987, ¶ 21. *See also* R.C. 2151.414(B)(1). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. Accordingly, on the appeal of an order granting permanent custody, "this Court does not review a best interest finding under an abuse of discretion standard of review, for a trial court has no discretion to make a finding that is not supported by the evidence. This Court reviews a trial court's factual findings to determine whether they were against the manifest weight of the evidence." *In re G.B.*, 9th Dist. Summit No. 22628, 2005-Ohio- 4540, ¶ 8 citing *In re Ozmun*, 9th Dist. Summit No. 18983, 1999 WL 225847, *3 (Apr. 14, 1999). Therefore, this Court construes Father's assignment of error as a challenge to the manifest weight of the evidence regarding the finding that permanent custody is in the best interest of the child and reviews it accordingly.

{¶8} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both

prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶9} The trial court found that the first prong of the permanent custody test was satisfied because Z.G. had been in the temporary custody of CSB for at least 12 of 22 consecutive months. Father does not contest that finding, but instead challenges the finding that permanent custody is in the best interest of the child. When determining whether a grant of permanent custody is in a child's best interest, the juvenile court must consider all the relevant factors, including those enumerated in R.C. 2151.414(D)(1): the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e). "Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors." *In re Smith*, 9th Dist. Summit No. 20711, 2002 WL 5178, *3 (Jan. 2, 2002); *see also In re Palladino*, 11th Dist. Geauga No. 2002-G-2445, 2002-Ohio-5606, ¶ 24.

{¶10} In determining whether the judgment of the trial court is manifestly against the weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers

the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶11} The first of the best interest factors requires consideration of the relevant personal interactions and interrelationships of the child. R.C. 2151.414(D)(1)(a). Z.G. was removed from his parents shortly after his birth and has resided in foster care since then. However, Mother and Father have not taken advantage of the opportunities afforded to them to be with their child. They were offered twice weekly hour-long visitation, but attended less than half of the scheduled visits. Of 141 scheduled visits, Mother attended 59 and Father attended 50. The parents were also offered hands-on intensive parenting instruction with Z.G. through Early Head Start for an additional hour and one-half weekly. They attended about half of the scheduled sessions, and Father was said to have attended many less than Mother. The parents were eventually terminated from the parenting program due to their poor attendance. In addition, the parents ended some visits early when they believed the child was tired, when they believed he was ill, or when Mother loudly announced - based on a cell phone call improperly taken during a visit - that "[s]omebody is talking shit about us." The case aides disagreed with the parents' decision to leave visits early for these reasons, believing that the parents should spend as much time as possible with their child in order to develop a bond with him and improve their parenting skills. According to the caseworker, the parents' poor attendance at visitation and the parenting

instruction sessions has negatively impacted their relationship with Z.G. and their ability to develop a bond with him.

{¶12} When Father did attend visits, he generally interacted fairly well with the child, reading books and doing developmentally appropriate things with him. Mother engaged with Z.G. somewhat, but was easily distracted and spent much of her time talking with other adults instead of focusing on her son. Mother sometimes struggled when Z.G. became upset and relied upon Father to calm him. Mother was said to do better in parenting Z.G. when Father was present. The caseworker explained that her main concern during the last few months has been with the parents, mostly Mother, arguing with the case aides. The caseworker said the parents' language occasionally became escalated and they used inappropriate language in front of Z.G. The caseworker also noted that both parents had gotten verbally aggressive with her during telephone conversations, such that she told Mother she would be bringing another person with her to home visits in the future.

{¶13} The parents believed and complained that one of the case aides supervising visits antagonized them, and Mother in particular. On cross-examination, Mother admitted that the case aide did not say anything inappropriate. The trial court found no evidence of inappropriate suggestions or interaction on the part of the case aides who supervised the visits.

{¶14} The CSB caseworker and the parenting instructor both observed that Z.G. was shy, quiet, and reserved during visits with his parents, whereas he babbled a lot and was very interactive when he was with his foster family. Z.G. was also very engaging, initiated interaction, and talked a lot when the parenting instructor worked alone with him, as she did when the parents did not attend. By the time of the permanent custody hearing, the parenting

instructor was able to say that Z.G. no longer required her services. Z.G. was developmentally on target.

**{¶15}** There is no evidence that either parent was substantially involved in the lives of any of their other children. Thus, Z.G. does not have a relationship with his nine half-siblings. Nor is there any evidence of a continuing positive relationship between the child and any other adult relatives.

**{¶16}** Reunification case planning services were offered to the parents in an effort to remedy the concerns that caused the removal of the child. As part of the mental health component of the case plan, both parents completed assessments and initiated counseling. Father was diagnosed with an adjustment disorder unspecified, which was described as a reaction to the stress of his current circumstances. His treatment plan involved efforts to improve his decision-making and to learn coping techniques to assist in managing his emotions. Father's counselor explained that he had made some progress, but that he had attended only half of the scheduled sessions since January 2015. She believes Father will continue to need the ongoing support of counseling regardless of the outcome of this case.

**{¶17}** Clinical psychologist Dr. Steven Burggraf diagnosed Mother with bipolar I disorder with severe symptoms, borderline personality disorder, reactive attachment disorder, and borderline intellectual function. He described "the pervasive and chronic nature" of Mother's "multiple mental health disorders." He believed Mother exhibited a significant number of high risk behaviors that would be dangerous for herself and others. In addition, he stated that Mother was either unable or unwilling to sustain treatment in the form of medication and therapy. He concluded that Mother would not be able to parent in a significant or safe way. He

believed that Mother's prognosis for recovery was poor and that alternative permanent placement should be considered for the child.

{¶18} Mother's counselor explained that her treatment plan sought to address emotional regulation, impulsivity, personal interactions, and judgment. Over the last 14 months, Mother attended only 19 of 50 counseling appointments, and her poor attendance was said to have impeded her progress. Mother's counselor did not consider Mother to be stable in her treatment and said that she had not successfully completed treatment. The results of Mother's evaluation and therapy efforts are particularly concerning because they reflect no progress since the evaluation she completed in the case involving J.G. two years earlier.

{¶19} The case plan also required the parents to engage in intensive parenting instruction. The parenting instructor testified that the program is designed to provide educational activities for the child as well as instruction for the parents. Because the parents missed so many sessions, agency guidelines required them to be dropped from the program. As a result of the parents' inconsistent attendance, the instructor explained that they made little progress and were not able to receive the guidance and opportunity to practice skills that the program was designed to provide. Even when the parents attended, she said they failed to focus and did not seem to make education their priority. Mother, in particular, would engage for a couple minutes and then go off task. She did not interact much with Z.G. The parenting instructor expressed concern that she was not able to provide the parenting skills that were needed because of her poor attendance and poor focus. She did not believe Mother improved during the course of the instruction. Although Father was able to sit and work with Z.G., the instructor was not able to complete the planned curriculum with him either. She concluded that she was not able to adequately provide parenting instruction to either parent.

{¶20} There is evidence that the parents obtained appropriate housing and that Father has been able to maintain fairly steady employment. Mother was currently employed part-time at a dollar store.

{¶21} The parents each testified in support of their own position. Father emphasized that he has been working fairly steadily as a CDL-licensed truck driver and is presently applying for jobs where he can be home every day to spend time with his son. He explained that he has to work to afford rent, food, and clothing. He stated that most of his missed visits and appointments were due to work conflicts, although he admitted on cross-examination that he did not always attend the Saturday visits and evening parenting instruction that were offered to accommodate his schedule. Father added that his housing has improved, he has safe and reliable transportation, and he believes he is more open to communication and compromise. Father believes it is in the best interest of Z.G. to be returned to the child's parents. He said he and Mother are currently living together and plan to continue together. He explained that they have not separated, but have "taken breaks" in the past. He said that when both parents are working, he would utilize day-care. Upon being asked whether Mother might be left alone with the child, he replied that there might be a little bit of time where she would be alone and offered that he could arrange to have his mother sit with her until he got home. At the same time, he believed that it was not a problem "at all" for Mother to be alone with Z.G. This statement is concerning in light of Mother's parenting evaluation, which found that Mother could not keep a child safe.

{¶22} Mother testified that she and Father have appropriate housing. She offered a year's lease into evidence, showing that the parents secured an apartment in October 2015. She testified that she is currently employed part-time at a dollar store. She has no substance abuse issues and claims to have been sober for seven years. She claims that she will soon start to work

on a GED and that she has purchased a car. Contrary to the testimony of the service providers, she believes that her visits are "great" and that she has a "strong bond" with her son.

{¶23} The wishes of this young child were expressed by a guardian ad litem who had worked with the family during a prior custody case involving J.G. as well as in the present case. *See* R.C. 2151.414(D)(1)(b). He cited the long history of mental health problems for both parents. Based on his investigation, he concluded that Mother is unable to parent a child on a full-time basis, and that Father, as the only person in the family who is able to regularly find work, could not always be present to assist in raising the child. He noted that Father does not have custody of any of his other children. The guardian ad litem explained that with these two parents residing together, their home is not a stable environment, and it does not appear that it will be in the near future. The guardian ad litem stated that the parents clearly love their child, but they are unable to provide him with a stable home in which to be raised, as the parents have not been able to remain stable themselves for an extended period of time. The guardian ad litem concluded that it would be in the best interest of the child to be placed in the permanent custody of CSB.

{¶24} The third of the best interest factors requires consideration of the custodial history of the child. R.C. 2151.414(D)(1)(c). Z.G. resided with the same foster family for virtually his entire life, having been removed shortly after his birth. He was said to be happy in the foster home, bonded with his foster family, and particularly attached to the foster mother.

{¶25} The CSB caseworker testified that Z.G. needs a legally secure permanent placement and concluded that the parents cannot provide that for him. *See* R.C. 2151.414(D)(1)d. She believed that permanent custody is in the best interests of the child. The kinship caseworker testified that she investigated several potential caregivers, but that none were

willing and appropriate for placement. The foster parents are interested in adoption if that opportunity becomes available.

{¶26} As to the fifth of the best interest factors, the trial court found, based on Father's testimony, that his parental rights were terminated as to three of his other children. *See* R.C. 2151.414(D)(1)(e).

{¶27} The record before this Court reveals significant concerns as to the ability of Father to parent this child. Notwithstanding nearly two years of case planning efforts, the caseworker continued to have concerns about the parenting skills of both parents as well as Mother's mental health issues. She believed that these matters affected the parents' ability to provide a permanent, safe, and stable home for Z.G. Mother's psychologist stressed long-standing concerns about Mother's chronic mental health disorders and emphasized his belief that they pose a danger to herself and others. Significantly, Father's willingness to rely on Mother in caring for the child reflects poor judgment and raises concerns for the safety of the child. The guardian ad litem concluded that these parents cannot provide a stable life for themselves or for their child. Both parents have extensive histories with children services. Father has no relationship with his seven other children. Notwithstanding Father's ability to interact with his son during brief periods at visitations, Father has not demonstrated that he would be able to keep his child safe and provide him with a stable home on a full-time and permanent basis.

{¶28} This Court concludes that the trial court did not clearly lose its way and create a manifest miscarriage of justice when it found that permanent custody was in Z.G.'s best interest. *See Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. Father's assignment of error is overruled.

Mother's Appeal

**{¶29}** Mother separately appealed from the judgment of the trial court. Her attorney has filed an *Anders* Brief with this Court, asserting that there are no issues justifying reversal of the trial court judgment. *See Anders v. California*, 386 U.S. 738 (1967). She has submitted one possible issue for review: whether the order granting permanent custody of the child to CSB is supported by clear and convincing evidence and by the weight of the evidence.

**{¶30}** This Court has carefully reviewed the entire record and concludes that the possible issue for review presented by Mother's counsel lacks merit. The trial court had ample evidence to support its decision granting permanent custody of the child to CSB. The evidence clearly and convincingly supports the judgment of the trial court. There do not appear to be any issues that support a reversal of the judgment of the trial court as to Mother.

III.

**{¶31}** Father's assignment of error is overruled. Mother's appeal is without merit and wholly frivolous under *Anders*, 386 U.S. 738. Mother's attorney is hereby removed as her counsel. The judgment of the Wayne County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

WHITMORE, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

CHRISTINA I. REIHELD, Attorney at Law, for Appellant.

YU MI KIM-REYNOLDS, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and MELODY L. BRIAND, Assistant Prosecuting Attorney, for Appellee.