[Cite as *In re A.C.-B.*, 2017-Ohio-374.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: A.C-B.

C.A. Nos.   28330
                    28349

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN 14 4 242

DECISION AND JOURNAL ENTRY

Dated: February 1, 2017

KLATT, J.

{¶ 1}   Appellants, C.L. and C.B., the biological parents of A.C-B., both appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated their parental rights and placed their child in the permanent custody of Summit County Children Services ("the agency").  For the following reasons, we affirm that judgment.

FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2}   Mother and Father are the unmarried parents of A.C-B., who was born on February 1, 2013.  Upon her birth, the agency removed her from the hospital based on concerns about the mother's mental health and the father's aggressive behavior.  She was placed in the agency's temporary custody but was returned to mother's custody in November 2013.  In April 2014, however, the agency filed a complaint in the trial court alleging that A.C-B. was a neglected and dependent child and seeking an emergency order of temporary custody.  The complaint set forth a number of troubling allegations, including drug use, a dirty, deplorable apartment, including the

smell of dog feces and five puppies in the one bedroom apartment, A.C-B.'s strange disappearance from the apartment, as well as repeated instances of parents not knowing where their child was. The trial court awarded temporary custody of the child to the agency, who placed her in a foster home. The agency developed, and the trial court adopted, a case plan in order to facilitate the reunification of A.C-B. and her parents. Significant components of that plan required the parents to engage in individual[1] and couples counseling, to participate in intensive child/parent interaction parenting classes, and to address their housing situation, which included maintaining a clean and appropriate home and establishing a safe environment for A.C-B.

{¶ 3} On March 14, 2016, the agency moved for permanent custody of A.C-B. After a hearing, the trial court found that A.C-B. had been in the temporary custody of the agency for more than 12 of the prior consecutive 22 months and that a grant of permanent custody to the agency would be in the child's best interest. Therefore, the trial court terminated the parents' parental rights and placed A.C.-B. in the permanent custody of the agency.

THE APPEAL

{¶ 4} Both parents appeal that decision. Mother assigns the following errors:

> [1.] The Trial Court erred and abused its discretion in granting the County's motion for permanent custody, and in terminating the parental rights of [mother and father].

> [2.] The Trial Court erred in and abused its discretion in finding that the County had made reasonable efforts to reunify the child with her parents.

{¶ 5} Father assigns the following errors:

> [1.] The trial court committed reversible error in finding that it is in the minor child's best interest that [s]he be placed in the permanent custody of Summit County Children Services as the state failed to meet its burden of proof by clear and convincing evidence.

---

[1] Both parents were to undergo counseling to address mental health concerns.

[2.] The trial court erred in granting Summit County Children Service's motion for permanent custody thereby terminating the parental rights of appellant as the trial court's findings were against the manifest weight of the evidence which could only lead to one conclusion that being contrary to the judgment of the trial court.

THE PERMANENT CUSTODY DETERMINATION

{¶ 6} Father's two assignments of error and mother's first assignment of error each contend that the trial court's decision finding that permanent custody was in the best interest of the child was error because the weight of the evidence does not clearly and convincingly support that finding. We disagree.

**Standard of Review**

{¶ 7} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996); *In re Z.G.*, 9th Dist. No. 16AP0039, 2016-Ohio-7636, ¶ 8.

{¶ 8} In the second prong of the test, the juvenile court must consider the following factors to determine whether a grant of permanent custody is in the child's best interest:

(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;

(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; [and]

(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1) through (5); *In re R.G.*, 9th Dist. No. 24834, 2009-Ohio-6284, ¶ 11. Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors. *In re Smith*, 9th Dist. No. 20711, 2002-Ohio-34; *In re Z.G.* at ¶ 9.

{¶ 9} The best interest prong of the permanent custody test requires the agency to prove by clear and convincing evidence that permanent custody is in the best interest of the children. *In re D.M. Children*, 9th Dist. No. 22206, 2004-Ohio-6369, ¶ 23. Clear and convincing evidence is that which will " 'produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. Furthermore, in reviewing a challenge to the weight of the evidence, this court " 'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' " *In re Z.G.* at ¶ 10, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. In weighing the

evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact. *Id.* at ¶ 21.

**Analysis**

{¶ 10} The juvenile court found that the first prong of the permanent custody test was satisfied because A.C-B. had been in the agency's temporary custody for 12 or more months of a consecutive 22-month period. Mother disputes that finding by pointing to instances in the juvenile court's opinion where A.C-B. is referred to as a boy and where the trial court incorrectly referred to placement in a "kinship placement." Mother argues that these errors indicate that the juvenile court may have confused this case with another. Notwithstanding those errors,[2] clear and convincing evidence supports the juvenile court's finding that A.C-B. had been in the agency's temporary custody for 12 or more months of a consecutive 22-month period. The agency obtained temporary custody of A.C-B. in April 2014 and that status continued through the date the agency filed for permanent custody on March 14, 2016, a period of almost two years. This period of time easily supports the juvenile court's 12 of 22-month finding for the first prong of the test.

{¶ 11} Moving on to the second prong of the test, both parents challenge the juvenile court's conclusion that permanent custody is in the best interest of the child. We first note that both parents assert their substantial compliance with the requirements of the case plan objectives. This court, however, has repeatedly emphasized that even substantial compliance with a case plan, in and of itself, does not prove that a grant of permanent custody to an agency is erroneous. *In re M.Z.*, 9th Dist. No. 11CA010104, 2012-Ohio-3194, ¶ 19. While evidence of case plan compliance

---

[2] Our reading of the juvenile court's opinion indicates no confusion over the identity of the child.

is usually relevant to the best interest determination, it is not determinative of it. *Id.*, citing *In re A.A.*, 9th Dist. No. 22196, 2004-Ohio-5955, ¶ 9. "Rather, the termination of parental rights is governed by R.C. 2151.414 and the proper focus of an evidentiary challenge is on the specific factors listed in that statute." *Id.* Therefore, we turn to the juvenile court's analysis of those factors.

{¶ 12} The first factor requires a consideration of the child's personal relationships. Here, the only evidence presented about such relationships involved the child's relationship with her biological parents and her foster family. The juvenile court found that A.C-B. knows her parents and seems to enjoy her time with them. The court went on to say that the child's family bond is with her foster mother, who the trial court noted A.C-B. is "extremely bonded with" and who wishes to adopt her. Mother argues that the juvenile court should have found that she had a "strong bond" with A.C-B. Evidence at the hearing demonstrated a relationship between mother and A.C-B., but contrary to her argument, it reveals more of the relationship described by the juvenile court. Heather Murphy, the agency's social worker, testified that A.C-B. knows her mother and father and hugs them at the start of their visits but does not talk about returning home with them after visits. Instead, she talks about returning to her foster home. While Murphy acknowledged the bond between mother, father, and A.C-B., she did not describe it as a strong bond. (Tr. 280, 296, 300.) Murphy went on to describe a strong bond that existed between A.C-B. and her foster family. The juvenile court's findings regarding the child's relationships with her biological parents and her foster parents are supported by clear and convincing evidence and support the best interest determination.

{¶ 13} The second factor requires consideration of the child's wishes. Because A.C-B. was only three at the time of the hearing, her guardian ad litem ("GAL"), Katherine Bissell,

testified as to her wishes. Bissell testified that A.C-B. was doing very well in foster care and was bonded with her foster family, which includes her foster mother and two brothers. (Hearing Tr. 390-93.) A.C-B. told her that she likes the foster home that she is living in and wanted to change her name. A.C-B. has never told her that she wants to live with her biological parents. It was Bissell's recommendation that a grant of permanent custody to the agency would be in the child's best interest. This factor also supports the juvenile court's best interest determination.

{¶ 14} The third factor considers the child's custodial history. A.C-B. has been in custody of the agency for her entire life except for a five-month period of time in 2013-2014. Additionally, she has been with the same foster family for the entire time during these proceedings. Again, this factor also supports the juvenile court's best interest determination.

{¶ 15} The fourth factor considers whether a legally secure permanent placement can be achieved without a grant of permanent custody to the agency. The juvenile court found that legally secure permanent placement could not be achieved without a grant of permanent custody based on the parents' inability to take steps to learn and implement parenting skills as well as their failure to provide safe and clean housing. These findings are supported by clear and convincing evidence.

{¶ 16} Becky Crookston, a therapist at Northeast Ohio Behavioral Health, worked with both parents in the intensive parenting classes. Crookston met with them 12 times between August 2015 and January 2016. The classes focused on their ability to make decisions for the best interest of A.C-B. and how that would impact their parenting. Crookston testified that mother had trouble managing her anger, which was not always appropriate. Mother also would not take responsibility for how her decisions impacted her child. Ultimately, Crookston ended the classes after concluding that parents were not making progress and were continuing to make decisions that could impair their relationship with A.C-B. (Tr. 164.) She noted no changes in the parents'

behavior from the start of the classes until the termination of the classes. Murphy also expressed concerns over the parents' ability to parent A.C-B. after observing family visits. (Tr. 247-48.)

{¶ 17} As to the state of the parents' home, Murphy testified that at the beginning of the matter, the parents' home was "deplorable" and that the agency had multiple concerns over animals and trash in the house. In December 2015, the parents were charged with animal cruelty because they had their dogs in a U-Haul truck. The case plan adopted by the juvenile court expressed concern over the multiple animals in the house and the agency asked parents to remove the dogs from the house. Subsequent attempts to inspect the inside of the house were largely unsuccessful. However, Murphy did observe dog chains and trash on the front porch of the house. Mother never provided Murphy with consistent information about whether they had dogs in the house although she did testify at the hearing that they were not in the house anymore.[3] Murphy did not think that the house was a safe environment for A.C-B. Bissell, the GAL, also expressed concern over the condition of the house and whether the dogs were still in the house. She testified that when she went to observe the house, the dogs would lunge at her. She also expressed concern over whether mother would ever truly get rid of the dogs.

{¶ 18} This evidence supports the juvenile court's findings concerning the parents' failure to improve their parenting skills and the concerns regarding the safety of the housing for A.C-B. Thus, the juvenile court's finding that a legally secure permanent placement cannot be achieved without a grant of permanent custody to the agency supports the juvenile court's best interest determination.

{¶ 19} The fifth factor does not apply in this case.

---

[3] The dogs were apparently living at a friend's house but were still registered to mother. (Tr. 356.)

**Conclusion**

{¶ 20} In light of the evidence presented, the juvenile court did not clearly lose its way and create a manifest miscarriage of justice when it found that the grant of permanent custody to the agency was in A.C-B.'s best interest. Accordingly, we overrule mother's first and father's two assignments of error.

DID THE AGENCY MAKE REASONABLE EFFORTS TO REUNIFY THE FAMILY?

{¶ 21} Last, mother contends in her second assignment of error that the agency failed to make reasonable efforts to reunify the family. We disagree.

{¶ 22} The Supreme Court of Ohio has held that a trial court is not obligated by R.C. 2151.419 to make a determination that the agency used reasonable efforts to reunify the family at the time of the permanent custody hearing unless the agency has not established that reasonable efforts have been made prior to that hearing. *In re H.H.*, 9th Dist. No. 25463, 2010-Ohio-5992, ¶ 12, citing *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 41-43; *In re M.Z.* at ¶ 16. Here, a magistrate found on May 30 and July 7, 2014, that the agency had exerted reasonable efforts toward reunification. The juvenile court made the same finding on February 11, 2016 after a review hearing. Mother did not file objections to or seek to appeal any of these decisions. Because the record fails to include a transcript of the hearings at which the relevant evidence was presented, this court must presume propriety of the reasonable efforts finding. *In re B.C.*, 9th Dist. No. 24308, 2008-Ohio-6130, ¶ 25-26; *In re T.K.*, 9th Dist. No. 24006, 2008-Ohio-1687, ¶ 22, citing *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980).[4]

{¶ 23} For these reasons, we overrule mother's second assignment of error.

---

[4] We also reject mother's argument if it is read to suggest a reference to the "diligent efforts" finding in R.C. 2151.414(E)(1). Such a finding is not required in a case, such as the present one, where a juvenile court makes the "12 of 22" first prong finding. *In re H.H.* at ¶ 29.

CONCLUSION

{¶ 24} Having overruled each of mother's and father's assignments of error, we affirm the judgment of the Summit County Court of Common Pleas, Juvenile Division.

Judgment affirmed.

―――――

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
WILLIAM A. KLATT
FOR THE COURT

SADLER, J.
DORRIAN, J.
CONCUR.

(Klatt, J., Sadler, J., and Dorrian, J., of the Tenth District Court of Appeals, sitting by assignment.

APPEARANCES:

THOMAS C. LOEPP, Attorney at Law, for Appellant.

JAMES E. BRIGHTBILL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.