[Cite as *In re K.T.*, 2022-Ohio-2232.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: K.T.

C.A. No.     30235

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 19-07-000614

DECISION AND JOURNAL ENTRY

Dated: June 29, 2022

CALLAHAN, Judge.

**{¶1}** Appellant Father appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated his parental rights and placed his child in the permanent custody of Summit County Children Services Board ("CSB" or "the agency"). This Court affirms.

I.

**{¶2}** Mother and Father are the biological parents of K.T., born April 5, 2018. The child was born with serious congenital defects known as VACTERL syndrome. In K.T.'s case, he lacks radius bones, thumbs, and one kidney; experiences severe breathing difficulties; and requires tube feedings and the use of a colostomy bag. He requires around-the-clock care and monitoring. The child spent the first eight months of his life in the neonatal intensive care unit before he was released into his young mother's care.[1] While with Mother, K.T. was frequently hospitalized for,

---

[1] Mother was 19 years old when she gave birth to K.T.

among other things, failure to thrive and pneumonia due to Mother's failure to properly suction his feeding tube.

{¶3} It is not clear from the record whether Mother and Father were living together while the infant was in Mother's care. They were apparently maintaining contact, however, because they got into a physical altercation during that time. Shortly thereafter, CSB investigated, removed the child, and filed a complaint alleging that K.T. was a neglected and dependent child. The agency based its complaint on allegations that the medically fragile child was not receiving proper and necessary care, that Mother suffered from unaddressed mental health issues, and that Father had both a history of domestic violence and an active warrant for his arrest. Both parents attended the shelter care hearing, waived their hearing rights, and agreed that the agency had probable cause to remove the child from his home. The juvenile court found that CSB had used reasonable efforts to try to avoid removing the child at that time, but that removal was necessary for the child's safety and well-being. Mother and Father were permitted to have visitation "as agreed and arranged by the parties and caregivers."

{¶4} At the adjudicatory hearing before a magistrate, Mother appeared, waived her hearing rights, and stipulated to the child's dependency. Although Father was not present, he was represented by counsel who informed the magistrate that Father had authorized her to waive his hearing rights and stipulate to the allegations in the complaint. CSB dismissed its allegation of neglect, and K.T. was adjudicated a dependent child.

{¶5} Mother later appeared and waived her rights to a dispositional hearing. Father was not present but he was represented by counsel. The agency presented its evidence to the magistrate who found that CSB had used reasonable efforts to prevent the child's continued removal from his

home. The magistrate granted temporary custody of K.T. to CSB and adopted the agency's case plan as an order. No party filed objections and the juvenile court adopted the magistrate's decision.

{¶6} The case plan included objectives for both parents. Specific to Father, he was required to maintain contact with the caseworker, maintain appropriate housing, participate in anger management classes as ordered by the criminal court, complete a background check, follow all laws, and refrain from further criminal activity. In addition, like Mother, Father was required to visit consistently with K.T., attend all of the child's medical appointments, properly give the child his medications and feedings, and demonstrate the ability to provide both routine and emergency (if necessary) medical care to the child during visits. Both parents agreed to these objectives.

{¶7} The agency later amended the case plan to add objectives for both parents. As to Father, he was additionally required to obtain a mental health assessment and follow all recommendations, provide current contact information to the caseworker, grant access by the caseworker to Father's home to assess, participate in refresher training to address the child's medical care needs, attend basic parenting classes, attend some (but not necessarily all) of the child's monthly services appointments (speech, occupational, and physical therapies; developmental disabilities services; and Help Me Grow or Early Intervention sessions), develop an understanding of the child's development and delays, and keep a calendar of the child's appointments.

{¶8} CSB amended the case plan twice more to modify Mother's case plan objectives. More than two years after the agency filed its complaint, it filed one last amendment to restructure the case plan. Father's objectives remained the same but he was no longer listed as an active

participant because he had not had any contact with CSB or engaged in any services or visitation during most of the case.

{¶9} As the case proceeded after the initial disposition, the juvenile court held seven review and sunset hearings. Father did not appear at any of them, although he was represented by counsel during the first five. His appointed counsel then moved to withdraw because Father had not remained in contact with her. The juvenile court copied Father personally on all orders after it allowed his appointed attorney to withdraw and advised him that he could contact the bailiff to reapply for appointed counsel should he wish to exercise that right.

{¶10} The juvenile court maintained K.T. in CSB's temporary custody, twice granting six-month extensions based on Mother's progress in addressing her case plan objectives. Father had little to no contact with the caseworker and guardian ad litem, made negligible progress on his case plan objectives, and rarely attended visits with the child. At each review or sunset hearing, the court found that CSB had used reasonable reunification efforts. No party filed objections or motions to set aside any decisions or orders.

{¶11} Immediately before the two-year anniversary of the initiation of the case, CSB filed a motion for permanent custody of K.T. Mother filed a motion for legal custody. Father requested appointed counsel approximately two weeks before the scheduled hearing on the motions, and the juvenile court reappointed his prior attorney. The final dispositional hearing was held before a visiting judge 29 months after CSB filed its complaint. Father appeared at that hearing, his first court appearance in more than two years.

{¶12} At the permanent custody hearing, Mother withdrew her motion for legal custody and voluntarily relinquished her parental rights. Father then orally moved for legal custody. After an evidentiary hearing, the juvenile court issued a decision in which it terminated Mother's

parental rights pursuant to her voluntary surrender, involuntarily terminated Father's parental rights, and granted permanent custody of K.T. to CSB. Father filed a timely appeal in which he raises one assignment of error for review.

II.

### ASSIGNMENT OF ERROR

THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT PLACED THE CHILD IN THE PERMANENT CUSTODY OF [CSB] WHEN [CSB] DID NOT PROVIDE FATHER WITH REASONABLE REUNIFICATION EFFORTS.

{¶13} Father argues that the juvenile court erred by granting permanent custody of K.T. to CSB because the agency failed to use reasonable efforts to reunify the child with him. This Court disagrees.

{¶14} R.C. 2151.419(A)(1) requires the juvenile court to determine whether the agency has used reasonable reunification efforts at several specified hearings at which the court removes the child from his home or continues the child's removal from his home. It is well settled that "the statute imposes no requirement for such a determination at the time of the permanent custody hearing unless the agency has not established that reasonable efforts have been made prior to that hearing." (Internal quotations omitted.) *In re L.R.*, 9th Dist. Summit Nos. 29266 and 29271, 2019-Ohio-2305, ¶ 14, quoting *In re A.C.-B.*, 9th Dist. Summit Nos. 28330 and 28349, 2017-Ohio-374, ¶ 22; *see also In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 41-43 (concluding that a reasonable efforts determination is necessary at a permanent custody hearing only if the agency has not demonstrated its use of reasonable efforts prior to that time).

{¶15} In this case, the juvenile court consistently found that CSB had used reasonable efforts to prevent the continued removal of K.T. from his home. Father attended the shelter care and adjudicatory hearings and stipulated to the juvenile court's findings and orders. After

evidentiary hearings held beginning with the initial dispositional hearing and continuing through seven review and/or sunset dispositional hearings, the juvenile court made the requisite statutory reasonable efforts determinations. Father failed to challenge any of those findings, despite having been properly served with notice of all relevant decisions and orders.

{¶16} As Father failed to object or move to set aside any reasonable efforts determinations by the juvenile court, he has forfeited any challenge to the agency's use of reasonable efforts on appeal except for a claim of plain error. *See In re L.R.* at ¶ 18. Although Father references plain error in his captioned assignment of error, he fails to cite the legal standard or make any argument to demonstrate plain error. In addition, Father has not provided this Court with any transcripts of the prior hearings after which the trial court consistently found that CSB had used reasonable reunification efforts. Accordingly, we must presume regularity as to those reasonable efforts determinations. *See id*.

{¶17} In addition, this Court is not persuaded by Father's argument that he should have been relieved of his duty to object to the juvenile court's reasonable efforts determinations because "[CSB] are the professionals" who should have known that the agency's case plan objectives did not realistically provide Father with the ability to reunify with K.T. The law is clear and does not support Father's argument. Juv.R. 40 provides a mechanism by which parties may challenge magistrate's orders and decisions. Father failed to do so here. Moreover, Juv.R. 40(D)(3)(b)(iv) expressly prohibits a party from even assigning as error on appeal the trial court's adoption of any factual finding or legal conclusion unless the party timely objected during the trial court proceedings. In addition, R.C. 2151.412(F)(2)(a) provides the mechanism by which a party may object to any proposed amendments to the case plan. Father could have taken advantage of those procedures if he believed that the agency's proposed case plan objectives were merely illusory

attempts by the agency to facilitate reunification, but he did not. Father's assignment of error is overruled.

III.

{¶18} Father's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

HENSAL, P. J.
SUTTON, J.
<u>CONCUR.</u>


<u>APPEARANCES:</u>

JAYSEN W. MERCER, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.

RYAN KINNEY, Attorney at Law, for Appellee.

HOLLY FARRAH, Guardian ad Litem.