**[Cite as *In re T.H.*, 2025-Ohio-3186.]**

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | | |

IN RE: T.H.

C.A. No.    24AP0032


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.    2023 JUV-C 000587

DECISION AND JOURNAL ENTRY

Dated: September 8, 2025

---

STEVENSON, Presiding Judge.

{¶1}    Appellant Mother appeals the judgment of the Wayne County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her child T.H. in the permanent custody of Wayne County Children Services Board ("CSB" or "the agency").  Because the judgment is not against the manifest weight of the evidence and Mother did not challenge the agency's use of reasonable efforts below, this Court affirms.

I.

{¶2}    Mother is the biological mother of seven children who were subject to consolidated proceedings in the juvenile court below.  The only child at issue in this appeal is T.H. who was born on June 11, 2023.  Father, who is Mother's husband, is the biological father of T.H., as well as another child who was born during the proceedings below.  CSB removed that child from the parents' custody shortly after her birth.  This Court references the seven siblings to the extent they are relevant to this appeal.

{¶3} At birth, T.H. exhibited symptoms of drug withdrawal. The infant's urine tested positive for amphetamines, while his meconium was positive for both methamphetamine and amphetamines. Mother admitted smoking CBD flower throughout her pregnancy, and she tested positive for methamphetamine, amphetamines, and THC at T.H.'s birth. CSB investigated further and discovered additional concerns believed to impact the seven children's well-being. The agency attempted to implement a safety plan for the family but was unable to identify anyone suitable who could alleviate the concerns about the home environment without formally removing the children. On June 23, 2023, CSB removed all seven siblings and initiated cases in the juvenile court. The agency alleged that T.H. was an abused, neglected, and dependent child.

{¶4} Mother and Father appeared for adjudication, waived their rights to a hearing, and stipulated that T.H. was a dependent child under R.C. 2151.04(C). CSB dismissed all remaining allegations of abuse, neglect, and dependency. Both parents later appeared for the initial disposition and again waived their rights to a hearing. While they stipulated to orders placing T.H. in CSB's temporary custody and adopting the agency's case, Mother and Father informed the juvenile court that they did not wish to engage in case plan services or seek visitation or legal custody at that time.

{¶5} Mother and Father appeared at the first review hearing. The magistrate found that the agency caseworker had been unable to have much involvement with the parents based on their earlier assertions that they did not desire to engage in case plan services. CSB, however, had investigated relatives and family friends for placement, but medical issues or criminal histories precluded further consideration of those persons as caregivers.

{¶6} Several months into the case, Mother relocated to an adjacent county. She moved to modify her parenting time, arguing that video visits were more appropriate than in-person

visitation at the agency because she did not feel safe there. CSB opposed video visits based on agency policy requiring in-person visitation in the interest of promoting stronger parent-child bonds and relationships. At this time, Mother had not visited with T.H. since his removal from her custody. The juvenile court agreed that in-person visits would be in the child's best interest. In consideration of Mother's safety concerns, however, the juvenile court ordered that Mother would be allowed to bring a parent advocate with her to visitation. Moreover, the trial court granted Mother the ability to have video visits with T.H. for no longer than 30 days while CSB vetted Mother's chosen parent advocate. The court further ordered Mother to contact the agency to request reinstatement of her visitation. Mother declined to take advantage of these options.

{¶7} Ten months into the case, CSB moved for permanent custody of T.H. and five of his siblings[1]. The agency alleged that Mother and Father had abandoned the child and that an award of permanent custody was in his best interest. Mother moved for legal custody of all seven children.

{¶8} While the dispositional motions were pending, Mother again requested Zoom visits with the children. She had attended a few in-person visits but was again removed from the visitation schedule for missing multiple visits. CSB agreed to reinstate Mother's visits upon her request, but Mother asserted that she would require video visits because she was pregnant and would need to rest for six weeks after the baby's birth. CSB opposed video visits, particularly for T.H. given his very young age. Nevertheless, the juvenile court granted Mother's request for Zoom visits with all the children, limiting those to within 30 days after the birth of Mother's infant.

{¶9} The matter proceeded to the final dispositional hearing as to T.H. and his six older siblings. The juvenile court granted permanent custody solely of T.H. to CSB and terminated

---

[1] The agency moved for legal custody to a third party regarding the sixth sibling.

Mother's and Father's parental rights as to that child. Mother timely appealed, raising two assignments of error for review. The juvenile court stayed its judgment pending this Court's resolution of the appeal.

## II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN GRANTING [PERMANENT] CUSTODY TO THE AGENCY.

{¶10} Mother argues that the juvenile court's judgment awarding permanent custody of T.H. to CSB is against the manifest weight of the evidence. This Court disagrees.

{¶11} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶12} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re*

*William S.*, 75 Ohio St.3d 95, 98-99 (1996). The best interest factors include: the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 2009-Ohio-6284, ¶ 11 (9th Dist.). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶13} As to the first prong, CSB alleged, and the juvenile court found, that Mother had abandoned T.H. pursuant to R.C. 2151.414(B)(1)(b). R.C. 2151.011(C) states:

> For the purpose of this chapter, a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days.

{¶14} Mother admits that she "failed to maintain her visits with [T.H.]" The record indicates that after the agency removed the child at the end of June 2023, it placed Mother on the visitation schedule in July 2023. After Mother failed to attend any visits, CSB removed her from the visitation schedule the following month. Therefore, Mother would have to call the agency to request reinstatement of visits. She failed to do so for many months. The agency visitation specialist assigned to supervise Mother's visits testified that Mother first visited with T.H. in May 2024, after having had no contact with the child for eleven months. Mother admitted during her testimony that she did not visit with T.H. until April or May 2024, after the child's removal shortly after his birth in June 2023. This evidence clearly and convincingly proves that Mother "failed to visit or maintain contact with the child for more than ninety days," as required to establish the presumption of abandonment.

{¶15} Mother argues, however, that the efforts she made to engage in therapy indicated her intent to process her grief so she could have a meaningful relationship with the child, thereby overcoming the presumption that she had abandoned T.H. In addition, she argues that it was not a lack of desire to visit the child that led her to have no contact with him during most of his first year of life, but rather her issues with CSB that gave rise to her lack of any involvement with the child. Mother's arguments are not persuasive.

{¶16} "'R.C. 2151.011(C) does not contain a requirement of any particular 'intent' on behalf of the parent; rather, the provision defines 'abandonment' solely in terms of the time between contacts.'" *In re A.P.*, 2024-Ohio-741, ¶ 52 (10th Dist.), quoting *In re D.P.*, 2007-Ohio-1703, ¶ 7 (10th Dist.). Mother failed to visit with T.H. for eleven months.

{¶17} For the first six months of the case, she refused to visit with any of her children, participate in case plan services, or otherwise cooperate with CSB. There was no evidence that Mother was unable to do any of those things. Moreover, at no time did she inform the caseworker that she wanted to focus on resolving her personal issues so that she would be able to have healthy interactions with T.H. Instead, Mother expressly informed the juvenile court at adjudication that she did not wish to engage in either visitation with the child or case plan services. At a hearing six months into the case, the juvenile court found that Mother had not begun to participate in case plan services or visitation. Accordingly, even if Mother's intent was to maintain a relationship with T.H., she did not do so for eleven months and there was no evidence she was taking any action in furtherance of her alleged intent within that time.

{¶18} In addition to failing to visit with the child, Mother made no effort to maintain other contact with him. "A parent retains numerous avenues to demonstrate continued interest and involvement if a child's life – through letters, gifts, or other forms of communication." *In re D.D.*,

2024-Ohio-2769, ¶ 21 (12th Dist.). Mother did not wish to visit with the child at the agency because of her anger and distrust of CSB. However, she did not attempt alternative means of contact with the child. She sent no gifts or pictures to T.H. And while she moved the juvenile court to modify her parenting time to allow video visitation, she did not do so until more than six months into the case, well beyond the 90 days required for abandonment.

{¶19} Moreover, although the trial court granted her motion in February 2024 in consideration of her safety concerns at the agency by allowing her to bring a parent advocate with her to visits and to have Zoom visits for up to 30 days while the agency vetted the advocate, she did not take advantage of those opportunities. Instead, Mother waited another three months to have her first visit with T.H. Under these circumstances, Mother has not rebutted the presumption that she abandoned the child when she failed to visit or otherwise maintain contact with him in excess of 90 days. Accordingly, the juvenile court's first prong finding of abandonment is not against the manifest weight of the evidence.

{¶20} As to the best interest of the child, Mother argues only that the juvenile court failed to adequately consider all the statutory factors, specifically, the mother-child relationship and interactions and whether a legally secure permanent placement could be achieved absent a termination of parental rights. *See* R.C. 2151.414(D)(1)(a) and (d). Our review of the record indicates that the trial court considered all relevant factors set forth in R.C. 2151.414(D)(1).

{¶21} CSB removed T.H. from Mother's home when he was twelve days old. The juvenile court found that Mother thereafter had no contact or visits with the child for eleven months, from June 23, 2023, until May 2024.

{¶22} The trial court further found that the infant spent the bulk of his life outside Mother's care. Based on Mother's abandonment of the child for much of his life, there was scarce

evidence of any relationship or interactions between the two. In fact, the guardian ad litem testified that Mother's failure to visit impeded the guardian's ability to observe any parent-child interaction, bond, or issues. Accordingly, the juvenile court considered Mother's relationship and interaction with T.H. to the extent the evidence allowed based on Mother's lack of involvement with the child.

{¶23} The juvenile court further considered whether permanency for T.H. was possible without terminating parental rights. The trial court's findings and dispositional orders regarding the child's five siblings for whom CSB also sought permanent custody emphasize its consideration of alternatives to permanent custody. In denying the agency's motion for permanent custody as to the five older siblings, the juvenile court found that extending temporary custody as to the oldest sibling who would soon be an adult was in that child's best interest due to his strong bond with Mother and his desire to maintain contact with her. As to the other four siblings, the juvenile court denied CSB's motions for permanent custody because there was an appropriate relative who could assume legal custody of one, while the father of the other three had demonstrated sufficient case plan compliance to warrant an extension of temporary custody. None of these facts were applicable to T.H.

{¶24} The juvenile court found that Mother and Father had not remedied the concerns underlying T.H.'s removal or successfully complied with their case plan objectives. It found that both parents had abandoned the child. The trial court further found that Mother and Father failed to cooperate with CSB. Accordingly, they did not identify any viable relatives or kin for placement or legal custody. The clear and convincing evidence adduced at the hearing bears out these findings. Therefore, the judgment reflects the juvenile court's consideration of whether the child's need for a legally secure permanent placement could be achieved without a grant of permanent custody to CSB.

{¶25} Although Mother does not address the other R.C. 2151.414(D)(1) best interest factors, this Court's review concludes that CSB met its burden of proof by clear and convincing evidence. T.H. was too young to express his wishes so the guardian ad litem spoke on his behalf and recommended permanent custody in the child's best interest. *See* subsection (D)(1)(b). T.H. spent all but twelve days of his life in CSB's temporary custody. *See* subsection (D)(1)(c). Finally, both parents abandoned the child pursuant to R.C. 2151.414(E)(10). *See* subsection (D)(1)(e).

{¶26} Based on a thorough review of the record, this is not the exceptional case in which the trial court lost its way and created a manifest miscarriage of justice by finding that CSB met its burden of proof relating to both prongs of the permanent custody test. Accordingly, the judgment is not against the manifest weight of the evidence. Mother's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT VIOLATED [MOTHER'S] DUE PROCESS RIGHTS BY FAILING TO ENSURE REASONABLE EFFORTS TOWARD REUNIFICATION[.]

{¶27} Mother argues that CSB failed to use reasonable efforts to facilitate her reunification with the child and that the juvenile court failed to make the necessary findings regarding the agency's use of reasonable efforts. This Court disagrees.

{¶28} R.C. 2151.419(A)(1) requires the juvenile court to determine whether the agency has used reasonable reunification efforts at certain hearings at which the court removes a child from the home or continues the child's removal from home. It is well settled that "the statute imposes no requirement for such a determination at the time of the permanent custody hearing unless the agency has not established that reasonable efforts have been made prior to that hearing." (Internal quotations omitted.) *In re L.R.*, 2019-Ohio-2305, ¶ 14 (9th Dist.), quoting *In re A.C.-B.*,

2017-Ohio-374, ¶ 22 (9th Dist.); *see also In re C.F.*, 2007-Ohio-1104, ¶ 41-43 (concluding that a reasonable efforts determination is necessary at a permanent custody hearing only if the agency has not demonstrated its use of reasonable efforts prior to that time).

{¶29} Throughout the case, the magistrate or judge found that CSB had used reasonable efforts to facilitate reunification. Mother waived her rights to both the adjudicatory and initial dispositional hearings and stipulated to the relevant findings. She did not challenge the agency's use of reasonable efforts at any other hearing, move to set aside any magistrate's order, or object to any magistrate's decision. She has, therefore, forfeited this issue on appeal except for a claim of plain error. *See In re B.H.*, 2021-Ohio-4152, ¶ 23 (9th Dist.). She has not argued plain error. Moreover, as Mother failed to provide this Court with transcripts of the hearings at which the trial court found that the agency had used reasonable efforts, we must presume regularity as to those determinations. *See In re L.R.*, 2019-Ohio-2305, at ¶ 18 (9th Dist.). Mother's second assignment of error is overruled.

### III.

{¶30} Mother's assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
SCOT STEVENSON
FOR THE COURT

CARR, J.
HENSAL, J.
CONCUR.

APPEARANCES:

YU MI KIM-REYNOLDS, Attorney at Law, for Appellant.

ANGELA WYPASEK, Prosecuting Attorney, and ALEXANDER MONTVILAS, Assistant Prosecuting Attorney, for Appellee.