OPINION
{¶ 1} Appellant Kimberly Baldwin ("Baldwin") brings this appeal from the judgment of the Court of Common Pleas of Hancock County, Juvenile Division, terminating her parental rights.
 {¶ 2} On June 6, 1992, Bryan Walker ("Bryan") was born to Baldwin and Robert Walker ("Walker"). Alyssa Walker ("Alyssa") was born to the couple on September 3, 1993. On August 15, 1996, Bryan and Alyssa were found to be dependent children, along with their biological brother, Brandin Walker ("Brandin"). Protective supervision over Bryan and Alyssa was granted to Hancock County Jobs and Family Services ("HCJFS") and Brandin was placed in HCJFS's temporary custody. Baldwin subsequently consented to giving HCJFS permanent custody of Brandin. During January and February, 1997, Bryan and Alyssa were placed in foster care due to Baldwin's incarceration for a DUI. The children were again placed in foster care during March 1999 while Baldwin was incarcerated for another DUI.
 {¶ 3} In June, 2002, HCJFS again filed a complaint for neglect of Alyssa and Bryan when it substantiated claims that Baldwin had been driving under the influence with the children in the vehicle. A second claim was substantiated that Baldwin had endangered Alyssa by driving under the influence with the child in the vehicle. The trial court ordered protective supervision in September, 2003. During that same time, a community control revocation hearing was scheduled for Baldwin when she was caught consuming alcohol while serving community control sanctions. Baldwin had previously been warned by HCJFS that if she was incarcerated again, HCJFS would take temporary custody of the children due to the inappropriate home life that would be offered by their step-father. The step-father had made multiple threats of suicide while holding a weapon in front of the children and had engaged in domestic violence with Baldwin. On September 9, 2003, Baldwin was taken into custody for violating her community control sanctions. An ex parte order granting temporary custody to HCJFS was filed on September 10, 2003. However, before the children could be taken into custody, they were taken to Iowa to live with their step-sister. Once the step-sister refused to return the children and Iowa Department of Children Services declined to become involved, HCJFS terminated its custody.
 {¶ 4} In January, 2004, Baldwin retrieved her children from Iowa. On March 5, 2004, HCJFS received a report that Bryan had cut his arms with a razor blade to prevent his mother from going out to the bars. HCJFS also received a report that the step-father had again threatened to kill himself while holding a gun to his head. HCJFS was then again granted temporary custody. A case plan was instituted on April 1, 2004. The case plan required Baldwin to 1) receive a mental health and substance abuse assessment and comply with the recommendations and 2) provide a safe and stable home for the children. Baldwin only attended one counseling appointment on August 25, 2004. Baldwin was present for one home visit on May 27, 2004. The remainder of the visits were missed or resulted in Baldwin refusing to allow the workers from HCJFS into the home.
 {¶ 5} On August 27, 2004, Baldwin was charged with driving under suspension. Baldwin admitted herself to St. Rita's for treatment of her addictions on October 28, 2004. Baldwin left St. Rita's on October 31, 2004, with instructions to report to an in-patient program, but never arrived. On December 11, 2004, Baldwin was charged with disorderly conduct due to intoxication and received a suspended sentence. HCJFS applied for permanent custody of the children on January 20, 2005, alleging that the children were either abandoned or that the children could not be placed with their parents within a reasonable time. On January 25, 2005, Baldwin was charged with aggravated disorderly conduct. Baldwin again received a suspended sentence. On January 26, 2005, Baldwin was sentenced to 180 days in jail for the August 2004 charge of driving while under suspension, though she only served part of that sentence. On March 16, 2005, Baldwin was arrested again for violating community control sanctions. Baldwin was subsequently indicted on April 5, 2005 for three counts of trafficking in controlled substances.
 {¶ 6} On May 17 and May 19, 2005, a hearing was held on the motion for permanent custody. HCJFS presented evidence as to the history outlined above. Additionally, HCJFS presented evidence that between the time HCJFS took temporary custody of the children and the time of the hearing, Baldwin changed residences six times as she moved between her residence with her husband and a residence with another man. Forty-six visitations were scheduled between Baldwin and the children. Baldwin attended 13 visits, but arrived late for five of those visits. Baldwin's last visit with the children occurred on October 15, 2004. On May 25, 2005, the trial court ruled that the children could not be placed with their parents within a reasonable time and granted permanent custody to HCJFS. Baldwin appeals these judgments and raises the following assignments of error.
The trial court erred when it found by clear and convincingevidence that the award of permanent custody to [HCJFS] waswarranted.
 [Baldwin] was denied the effective assistance of counsel inthis case, and counsel's errors were so serious as to prejudicethe award of permanent custody.
 {¶ 7} The standard for termination of parental rights is set forth in R.C. 2151.414.
(B)(1) * * * [T]he court may grant permanent custody of achild to a movant if the court determines at the hearing heldpursuant to division (A) of this section, by clear and convincingevidence, that it is in the best interest of the child to grantpermanent custody of the child to the agency that filed themotion for permanent custody and that any of the followingapply:
 (a) The child is not abandoned or orphaned or has not been inthe temporary custody of one or more public children servicesagencies * * * for twelve or more months of a consecutivetwenty-two month period ending on or after March 18, 1999, andthe child cannot be placed with either of the child's parentswithin a reasonable time or should not be placed with the child'sparents.
 (b) The child is abandoned.
* * *
(2) * * * [T]he court shall grant permanent custody of thechild to the movant if the court determines in accordance withdivision (E) of this section that the child cannot be placed withone of the child's parents within a reasonable time or should notbe placed with either parent and determines in accordance withdivision (D) of this section that permanent custody is in thechild's best interest.
* * *
(D) In determining the best interest of a child at a hearing * * *the court shall consider all relevant factors, including, butnot limited to, the following:
 (1) The interaction and interrelationship of the child withthe child's parents, siblings, relatives, foster caregivers andout-of-home providers, and any other person who may significantlyaffect the child;
 (2) The wishes of the child, as expressed directly by thechild or through the child's guardian ad litem, with due regardfor the maturity of the child;
 (3) The custodial history of the child * * *.
 (4) The child's need for a legally secure permanent placementand whether that type of placement can be achieved without agrant of permanent custody to the agency;
* * *
(E) In determining at a hearing * * * whether a child cannotbe placed with either parent within a reasonable period of timeor should not be placed with the parents, the court shallconsider all relevant evidence. If the court determines, by clearand convincing evidence * * * that one or more of the followingexist as to each of the child's parents, the court shall enter afinding that the child cannot be placed with either parent withina reasonable time or should not be placed with either parent:
 (1) Following the placement of the child outside the child'shome and notwithstanding reasonable case planning and diligentefforts by the agency to assist the parent to remedy the problemsthat initially caused the child to be placed outside the home,the parent has failed continuously and repeatedly tosubstantially remedy the conditions causing the child to beplaced outside the child's home. In determining whether theparents have substantially remedied those conditions, the courtshall consider parent utilization of medical, psychiatric,psychological, and other social and rehabilitative services andmaterial resources that were made available to the parents forthe purpose of changing parental conduct to allow them to resumeand maintain parental duties.
 (2) Chronic mental illness, chronic emotional illness, mentalretardation, physical disability, or chemical dependency of theparent that is so severe that it makes the parent unable toprovide an adequate permanent home for the child at the presenttime and, as anticipated, within one year after the court holdsthe hearing * * *.
* * *
(4) The parent has demonstrated a lack of commitment towardthe child by failing to regularly support, visit, or communicatewith the child when able to do so, or by other actions showing anunwillingness to provide an adequate permanent home for thechild.
* * *
(6) The parent has been convicted of or pleaded guilty to anoffense under [R.C. 2919.22(A),(C)] * * * and the child or asibling of the child was a victim of the offense * * *. R.C.2151.414. Thus to terminate parental rights under R.C.2151.414(B)(1)(a), the trial court must find 1) that the child should not be placed with his or her parents within a reasonable time and 2) that terminating parental rights is in the best interest of the child.
 {¶ 8} To enter a finding that the child cannot or should not be placed with his or her parents within a reasonable time, the trial court must review the factors under R.C. 2151.414(E). If the trial court finds one of the factors present by clear and convincing evidence, the trial court must make the finding that the child cannot be returned to the parents. A review of the record indicates that Baldwin repeatedly failed to comply with the case plan. She did not obtain a complete mental health and substance abuse evaluation and did not comply with any recommendations made by doctors concerning her substance abuse problem. Tr. 68-78. Baldwin also failed to comply with the requirement that she provide a safe and stable home for the children. Baldwin refused to allow the social worker inside the home to determine if the case plan was being met. Additionally, Baldwin changed residences numerous times during this period without notifying HCJFS. Baldwin also failed to appear for scheduled visits, both at her home and at HCJFS's offices. Tr. 85-102. Thus, the evidence supports a finding under R.C.2151.414(E)(1).
 {¶ 9} The record also indicates that Baldwin had a severe problem with alcohol and drugs. Throughout Baldwin's nine year history with HCJFS, Baldwin had been arrested numerous times for driving under the influence, twice with at least one child in the car, for disorderly conduct related to her alcohol use, and for trafficking in controlled substances. Exhibits 17-31. Baldwin admitted that she drank heavily and used drugs. However, Baldwin failed to complete any of the drug treatment programs offered to her. Baldwin also admitted that she was having liver problems due to her excessive use of alcohol. Tr. 93. As a result of Baldwin's alcohol and drug use, she was frequently in and out of jail, resulting in her having to place the children in foster care several times over the years. The children have been severely impacted by Baldwin's continual use of alcohol and drugs, including Bryan's cutting himself with a razor blade to prevent his mother from going to the bars. Tr. 144. Given the evidence before it, the trial court could make a finding under R.C.2151.414(E)(2).
 {¶ 10} R.C. 21515.414(E)(4) questions whether the parent has demonstrated a lack of commitment to the child by failing to regularly communicate with the child when able to do so. The children were removed from the home on March 5, 2004, and weekly visits were set up. Baldwin attended visits on March 11, April 16, April 29, May 13, May 27, July 19, August 2, and August 20, 2004. Baldwin attended visits, but arrived late on March 25, March 31, June 10, August 9, and October 15, 2004. Baldwin missed the following visits, but called with an excuse for March 18, May 6, June 3, June 28, August 27, September 3, September 10, September 24, October 1, November 5, December 3, 2004. The remaining visits were cancelled without reason. Thus, Baldwin only attended 13 of the 43 visits scheduled with the last visit made by Baldwin being October 15, 2004.[1] Given this evidence, the trial court did not err in finding that Baldwin had demonstrated a lack of commitment to her children by failing to visit with them pursuant to R.C. 2151.414(E)(4).
 {¶ 11} Under R.C. 2151.414(E)(6), the trial court must made a finding that the child cannot be placed with the parents within a reasonable time if the child or a sibling of the child was the victim of child endangerment under sections A or C of the statute. A review of the record indicates that Baldwin was twice convicted of endangering children for her actions towards Alyssa. Ex. 17 and 24. Thus, this factor applies. Since the record supports findings under these various factors, the trial court was presented with clear and convincing evidence to support findings under R.C. 2151.414(E).
 {¶ 12} The next issue is whether the termination of parental rights was in the best interest of the children. The trial court stated that it reviewed the factors set forth in the statute and determined that the children would be better served if permanent custody was granted to HCJFS. In support of its judgment, the trial court pointed to Baldwin's lack of cooperation with the case plan, her dependency on alcohol and drugs, her frequent incarcerations, her inability to provide a stable and safe home, her convictions for child endangering, and her current charges for drug trafficking. The trial court also considered the domestic violence in the home between Baldwin and her husband. All of these factors were supported by testimony and exhibits. Thus, the trial court did not err in finding that termination of parental rights was in the best interest of the children. The first assignment of error is overruled.
 {¶ 13} Next, Baldwin claims that she was denied effective assistance of counsel. In order to reverse a judgment for ineffective assistance of counsel, a defendant must first show that counsel's performance was deficient and, second that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. State v. Cassano, 96 Ohio St.3d 94,2002-Ohio-3751, 772 N.E.2d 81. The defendant must show that there was a reasonable probability that but for counsel's errors, the result of the trial would have been different. Id. Baldwin claims that her counsel was ineffective for the following reasons: 1) only one witness was called besides Baldwin and 2) violated a local rule requiring disclosure of potential witnesses in writing. This court notes that Baldwin raises several other alleged problems with the attorney, but concedes that those problems are not reflected in the record. Without any support in the record, this court is unable to address those issues.
 {¶ 14} The first argument made by Baldwin is that her counsel was ineffective for not calling all the potential witnesses. The decision whether to call a witness is "within the rubric of trial strategy and will not be second-guessed by a reviewing court."State v. Williams, 99 Ohio St.3d 493, 2003-Ohio-4396,794 N.E.2d 27, ¶ 125. While the decision to call or not to call these witnesses might be debatable, it does not constitute ineffective assistance of counsel. State v. Martin, 2nd Dist. No. 20610,2005-Ohio-1369, ¶ 19. The record does not provide any evidence to support a claim that the failure to call the witnesses was not sound trial strategy and was thus did not constitute ineffective assistance of counsel.
 {¶ 15} Baldwin also claims that her attorney was ineffective for failing to comply with a local rule requiring him to disclose in writing all potential witnesses. However, this failure had no effect on the trial. The attorney for HCJFS merely requested that since an oral notification had been given, the list be placed upon the record. This was done and the case proceeded. Since no prejudice could possibly have resulted from this mistake, it cannot be deemed to be ineffective assistance of counsel. The second assignment of error is overruled.
 {¶ 16} The judgments of the Court of Common Pleas of Hancock County, Juvenile Division are affirmed.
Judgments affirmed.
 Cupp, P.J., and Shaw, J., concur.
[1] HCJFS did not count visits missed due to incarceration.