[Cite as *In re A.P.*, 2024-Ohio-741.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the matter of: | : | |
| [A.P., | : | No. 23AP-253 |
| | | (C.P.C. No. 21JU-7139) |
| F.S.G., Mother | : | (REGULAR CALENDAR) |
| Appellant]. | : | |

D E C I S I O N

Rendered on February 29, 2024

**On brief:** *Robert J. McClaren*, for Franklin County Children Services.

**On brief:** *Victoria E. Ullmann*, for appellant.

APPEAL from the Franklin County Court of Common Pleas
Division of Domestic Relations, Juvenile Branch

JAMISON, J.

{¶ 1} Appellant, F.S.G., mother of A.P., appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, placing A.P. in the permanent custody of appellee, Franklin County Children Services ("FCCS"). For the following reasons, we affirm.

**I. FACTS AND PROCEDURAL HISTORY**

{¶ 2} A.P. was born on September 10, 2019 to appellant and father, D.P. Appellant and D.P. are not married. There is no dispute that FCCS has been working with the family since August 2018 due to circumstances surrounding A.P.'s older siblings, E.G., P.G., and A.J.P. *See In re A.P.*, 10th Dist. No. 22AP-570, 2023-Ohio-2463 ("*A.P. I*") (affirming the

trial court's determination that Permanent Court Commitment ("PCC"), is in the best interest of P.G. and A.P.).[1]

{¶ 3} As a result of FCCS's ongoing interactions and observations of the family, FCCS received a Temporary Order of Protective Supervision for A.P. on November 17, 2020. A.P. was subsequently returned to appellant in February 2021 at the home appellant shared with D.P., located on Burgess Avenue in Columbus, Ohio. An incident later occurred at the home which led to charges of domestic violence and aggravated menacing against D.P. D.P. subsequently pled guilty to a domestic violence charge, and he was placed on two-years of community control with a stay away order relative to appellant. Appellant had also been charged with domestic violence in the past, but she pled guilty to criminal mischief. Appellant testified at the PCC hearing that her probationary period arising from her 2020 conviction had recently been extended.

{¶ 4} In March 2021, D.P. was observed at the Burgess Avenue home in apparent violation of the stay away order. FCCS obtained a Temporary Order of Custody of A.P. on March 17, 2021 and A.P. was temporarily placed in foster care. Appellant moved out of the address she shared with D.P. in May 2021. Appellant subsequently reported she was living with her brother, had a job, had completed a parenting class, completed four drug screens, and attended four out of five visits with A.P.

{¶ 5} On July 21, 2021, FCCS filed a complaint alleging A.P. was a neglected child under R.C. 2151.03(A)(2) and a dependent child under R.C. 2151.04(C) and (D). On July 22, 2021, a magistrate found that placement of A.P. in appellant's home was contrary to her best interests and that FCCS had made reasonable efforts to prevent A.P.'s removal. Pursuant to the order, appellant was permitted supervised visits with A.P. and required to: (1) complete and follow the recommendations of a mental health assessment, an alcohol and other drug assessment, a domestic violence assessment, and parenting classes; (2)

---

[1] The complaint that leads to the case involving A.P.'s older siblings alleges that on August 18, 2018, E.P., P.G., and A.J.P. were found in the home without adult supervision, the front door open, and one sibling outside on the swing with a blanket over his head and his diaper full of feces. According to the complaint, when FCCS and local police went into the home, they observed the children in diapers and having a foul odor of urine, feces, and dirt. The children also had dirt, dried feces, bite marks, and scabs on their bodies. The home was observed to be in an unsanitary condition with no edible food. According to the complaint, when contacted, appellant stated she could "no longer do it anymore," and she wanted FCCS to take custody of her children. (July 21, 2021 Compl. at 1.)

complete random drug screens; (3) participate with the FCCS caseworker; and (4) attend visits.

{¶ 6} Following a September 8, 2021 hearing, the trial court adopted the case plan. On December 13, 2021, a magistrate adjudicated A.P. dependent.

{¶ 7} Kirsten Webb, who replaced Sierra Ellis as caseworker in September 2022, testified that the current case plan, adopted by the juvenile court on November 1, 2021, requires appellant to meet certain objectives, including: a legal source of income with verification; obtaining appropriate housing free of hazards, with verification; a psychological evaluation and follow-up; completing domestic violence batterer's and/or victim's assessment and follow-up; random drug screening with third-party provider, Aver health; participate in visitation; provide for all A.P.'s basic needs, including a link with WIC upon A.P.'s return; notifying service team within 24 hours of any change of address or contact information; and being available at least once per month for announced and/or unannounced home visits.

{¶ 8} On October 19, 2021, appellant filed objections to the magistrate's September 18, 2021 decision granting Temporary Court Commitment ("TCC"). On December 29, 2021, the trial court issued a judgment overruling appellant's objections. Appellant appealed to this court from the juvenile court judgment. On December 1, 2022, this court issued a decision affirming the trial court's judgment. *In re A.P.*, 10th Dist. No. 22AP-62, 2022-Ohio-4295 ("*A.P. II*").

{¶ 9} On January 27, 2022, FCCS filed a motion seeking PCC for A.P. On June 6, 2022, the trial court commenced a PCC hearing for A.P.'s two older siblings P.G. and A.J.P. At the June 6, 2022 hearing, the trial court denied appellant's motion to stay proceedings on the PCC motion for A.P. The trial court went on to find PCC was in the best interest of both P.G. and A.J.P. The judgment was later affirmed by this court in *A.P. I*.

{¶ 10} On February 27, 2023, the trial court commenced a four-day evidentiary hearing on the motion. The trial court combined the trial of the PCC motion as to A.P. with the PCC motion filed by FCCS as to A.P.'s older sibling E.G.[2] Though D.P. participated in proceedings in the trial court and completed certain aspects of the case plan related to A.P., he did not appear at the PCC hearing, and he has not appealed from the trial court judgment

_____

[2] E.G. has been permanently placed with his paternal grandmother in Nevada.

granting PCC. At the PCC hearing, the trial court heard testimony from appellant, FCCS caseworker Webb, and Guardian ad Litem ("GAL"), Kelley Boller. The June 6 and June 7, 2022 testimony of FCCS caseworker Ellis was also admitted into evidence by agreement of the parties.

{¶ 11} On April 3, 2023, the trial court issued a decision and judgment entry granting the motion for PCC and awarding permanent custody of A.P. to FCCS. Appellant timely appealed to this court from the April 3, 2023 judgment.

## II. ASSIGNMENTS OF ERROR

{¶ 12} Appellant assigns the following as trial court errors:

[1.] The manifest weight of the evidence shows that the trial court failed to provide parents with all appropriate constitutional and procedural rights during this proceeding from its inception.

[2.] The trial court's determination that F.S.G. suffers from chemical dependency that prevents placement of A.P. with her with a year is against the manifest weight of the evidence.

[3.] The trial court's determination that mother abandoned A.P. is against the manifest weight of the evidence.

[4.] The trial court's finding that the juvenile court had determined that F.S.G.'s children had been determined to be neglected or dependent three separate times is against the manifest weight of the evidence.

[5.] The trial court's determination that F.S.G. suffers from chronic mental illness that prevents placement of A.P. with her within a year is against the manifest weight of the evidence.

[6.] The trial court's determination that F.S.G. was convicted of a "lesser offense of domestic violence" is against the manifest weight of the evidence and proof of bias.

[7.] The trial court's determination that mother could not obtain housing in a reasonable period was against the manifest weight of the evidence.

[8.] The trial court decision that the agency made reasonable and diligent efforts to reunify the family is against the manifest weight of the evidence.

[9.] The trial court's determination that F.S.G. failed to remedy the problems that caused the case to open is against the manifest weight of the evidence.

## III.  STANDARD OF REVIEW

{¶ 13} This court reviews a manifest weight challenge to a trial court's judgment granting PCC under the following standard:

> In reviewing a judgment granting permanent custody to FCCS under the manifest weight standard, an appellate court must make every reasonable presumption in favor of the judgment and the trial court's findings of facts. If the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the juvenile court's verdict and judgment. An appellate court will not overturn a permanent custody order when it is supported by competent, credible evidence.

(Internal citations and quotations omitted.)  *In re J.R.*, 10th Dist. No. 19AP-228, 2020-Ohio-1347, ¶ 27, quoting *In re E.B.*, 10th Dist. No. 16AP-352, 2017-Ohio-2672, ¶ 19.  *See also A.P., I*; *In re T.L.*, 10th Dist. No. 20AP-591, 2021-Ohio-3221.

## IV. ANALYSIS

{¶ 14} "Parents have a constitutionally-protected fundamental interest in the care, custody, and management of their children."  *In re H.D.*, 10th Dist. No. 13AP-707, 2014-Ohio-228, ¶ 10, citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000).  "The Supreme Court of Ohio recognizes the essential and basic rights of a parent to raise his or her child."  *A.P. I* at ¶ 9, citing *In re Murray*, 52 Ohio St.3d 155, 157 (1990).  These parental rights are not absolute, however, as a parent's natural rights are subject to the ultimate welfare of the child.  *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979).  Indeed, the state may terminate the parental rights of natural parents, under certain circumstances, when termination is in the best interest of the child.  *A.P. I* at ¶ 9, citing *H.D.* at ¶ 10, citing *In re E.G.*, 10th Dist. No. 07AP-26, 2007-Ohio-3658, ¶ 8.

{¶ 15} " '[T]o terminate parental rights, the movant must demonstrate by clear and convincing evidence that (1) termination is in the child's best interests, and (2) one of the four factors enumerated in R.C. 2151.414(B)(1) applies.' "  *In re A.E.*, 10th Dist. No. 07AP-685, 2008-Ohio-1375, ¶ 13, quoting *In re J.Z.*, 10th Dist. No. 05AP-8, 2005-Ohio-3285,

¶ 10. *See also* R.C. 2151.414(B)(1) and (D). " 'Clear and convincing evidence is the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established.' " *A.E.* at ¶ 13, quoting *J.Z.* at ¶ 10, citing *In re Abram*, 10th Dist. No. 04AP-220, 2004-Ohio-5435, *appeal denied*, 104 Ohio St.3d 1441, 2004-Ohio-7033. "It does not mean clear and unequivocal" evidence and does not require proof beyond a reasonable doubt." (Internal quotation and citation omitted.) *Abram* at ¶ 14.

**A. Statutory Grounds for PCC under R.C. 2151.414(B)**

{¶ 16} R.C. 2151.414(B)(1) provides in relevant part as follows:

> [T]he court may grant permanent custody of a child to a movant if the court determines * * *, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child * * * and that any of the following apply:
>
> (a) The child is not abandoned * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> (b) The child is abandoned.
>
> * * *
>
> (e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶ 17} Here, the trial court found by clear and convincing evidence PCC was in A.P.'s best interest and the grounds listed in R.C. 2151.414(B)(1)(a), (b), and (e) applied. This court has previously explained that "[u]nder the statutory child custody scheme, if the juvenile court finds, by clear and convincing evidence, that any of the grounds listed in R.C. 2151.414(B)(1) exist, the juvenile court must award custody to the moving party if it also finds, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody." *E.B.* at ¶ 28; R.C. 2151.414(B).

{¶ 18} In the *E.B.* case, the trial court found the grounds for PCC listed in R.C. 2151.414(B)(1)(a) existed and alternatively, the grounds for PCC listed in R.C.

2151.414(B)(1)(d) existed. This court concluded that the weight of the evidence supported the finding under R.C. 2151.414(B)(1)(d), and further concluded PCC was in the children's best interest. In affirming the trial court, we held that even though the trial court erred in finding the grounds listed in R.C. 2151.414(B)(1)(a) existed as to the children, that erroneous finding could not have prejudiced appellant because the statutory scheme requires the trial court to award custody to the moving party if it finds that *any of* the grounds listed in R.C. 2151.414(B) exist and PCC is in the best interest of the children. *Id.* at ¶ 27. *See also In re C.C.*, 12th Dist. No. CA2011-11-113, 2012-Ohio-1291, ¶ 22-23 (appellant was not prejudiced by the trial court's erroneous finding that children could not be placed with the parents within a reasonable time under R.C. 2151.414(B)(1)(a), because the evidence supported the alternative finding under R.C. 2151.414(B)(1)(b), that the children were abandoned); *In re Franklin*, 3d Dist. No. 9-06-12, 2006-Ohio-4841, ¶ 16 (trial court's erroneous finding that the children were within the agency's custody for the requisite time under R.C. 2151.414(B)(1)(d) was harmless error because the evidence supported the trial court's alternative finding that the children were abandoned under R.C. 2151.414(B)(1)(b)); *In re L.C.*, 9th Dist. No. 29459, 2019-Ohio-5222 (trial court's erroneous findings under R.C. 2151.414(B)(1)(d) was harmless error because the evidence supported the alternative finding under subsection (B)(1)(e)); *In re S.W.*, 3d Dist. No. 9-18-29, 2019-Ohio-2068, ¶ 22-23 (because the grounds for PCC listed in R.C. 2151.414(B)(1)(d) provided an appropriate basis for the trial court to award permanent custody to the agency, the question whether the evidence also supported the trial court's finding under R.C. 2151.414(B)(1)(a) was moot).

## B. Appellant's Assignments of Error

{¶ 19} As FCCS points out, there are some glaring omissions from appellant's merit brief that raise concerns. For example, appellant does not challenge, by an assignment of error or otherwise, the trial court's conclusion that PCC is in A.P.'s best interest. Accordingly, if we find that clear and convincing evidence supports any of the trial court's finding under R.C. 2151.414(B)(1), we must affirm the award of PCC. *See* R.C. 2151.414(B)(1). Additionally, there is no assignment of error directly challenging the trial court's conclusion that A.P. cannot or should not be placed with appellant under R.C. 2151.414(B)(1)(a). Rather, appellant challenges some but not all of the trial court's

predicate findings under R.C. 2151.414(E). As the trial court must award PCC to the agency, pursuant to the grounds listed in R.C. 2151.414(B)(1)(a), if PCC is in the child's best interest, and clear and convincing evidence supports *any one* of the R.C. 2151.414(E) findings made by the trial court, appellant's failure to assign error or otherwise challenge the trial court's findings under R.C. 2151.414(E)(4) and (11), essentially prevents a reversal of the trial court's judgment in this case. *E.B.* at ¶ 59.[3]

{¶ 20} Despite the substantive irregularities in appellant's merit brief, we will review appellant's assignments of error and any dispositive issues relevant to the PCC determination in this case.

### 1. Grounds for PCC Under R.C. 2151.414(B)(1)(a)

{¶ 21} Our review of the trial court's decision reveals that PCC was awarded to FCCS primarily on the grounds listed in R.C. 2151.414(B)(1)(a). Under the heading "Conclusions of Law Regarding Permanent Custody/Legal Custody," the April 3, 2023 decision and judgment entry provides in relevant part as follows:

> [A.P.] was not in the temporary custody of the agency for more than 12 months out of a consecutive 22-month period. However, based on the existence of the factors under R.C. 2151.414(E) enumerated and detailed herein, the Court finds by clear and convincing evidence that [A.P.] should not or cannot be placed with either parent in a reasonable time due to the applicable factors outlined above.

(Apr. 3, 2023 Decision and Jgmt. Entry at 25-26.)

{¶ 22} R.C. 2151.414(B)(1)(a) applies to A.P. if she is not abandoned, has not been in the temporary custody of FCCS for 12 or more months of a consecutive 22-month period, but she cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents. For the trial court to make a finding that a child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents, the trial court must find that *one or more* of the

---

[3] Appellant has made similar errors in briefing before this court. For example, in *A.P. I*, appellant failed to separately argue her assignments of error in violation of App.R. 16(A)(7). Despite this non-compliance, we addressed the arguments raised in appellant's brief. Similarly, in the prior appeal in this case, *A.P. II*, appellant again failed to separately argue her assignments of error. Even more concerning to this court, however, was appellant's failure to assign error as to an independent ground that would support the trial court's decision. *A.P. II* at ¶ 29 ("Because an unchallenged, independent ground supports the trial court's decision and judgment, appellant's attempt to reach other issues on appeal necessarily fails.").

factors enumerated in R.C. 2151.414(E) exist. *E.B.* at ¶ 54. In this instance, the trial court found the factors enumerated in R.C. 2151.414(E)(1), (2), (4), (10), (11), and (14) existed as to A.P.

### a. The Factor Enumerated in R.C. 2151.414(E)(4) Applies to A.P.

{¶ 23} R.C. 2151.414(E) provides in relevant part as follows:

> If the court determines, by clear and convincing evidence * * * that *one or more of the following exist* as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
>
> * * *
>
> (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[.]

(Emphasis added.)

{¶ 24} As FCCS points out, the trial court's finding that the factor enumerated in R.C. 2151.414(E)(4) existed as to A.P. has not been directly challenged by appellant in an assignment of error. However, in fairness to appellant, and because appellant's seventh assignment of error arguably challenges the adequate permanent housing element of R.C. 2151.414(E)(4), we will review the R.C. 2151.414(E)(4) finding under the manifest weight standard.

{¶ 25} The testimony in the record establishes that appellant visited A.P. in April 2022, but that appellant subsequently left the state of Ohio in May 2022 and moved to Utah. A.P. was two and one-half years old at the time. Appellant remained in Utah for several months and did not return to Ohio until August 2022.

{¶ 26} Additionally, although appellant admits she returned to Columbus, Ohio on August 24, 2022, she did not resume visits with A.P. until December 2022. Appellant has asserted a variety of reasons for not immediately resuming visits with A.P. on returning to Ohio. She testified she contacted Ellis when she returned from Utah, but that visitation was not scheduled because FCCS was transitioning her case from Ellis to Webb. Appellant also testified as follows:

[Counsel for FCCS]. So, to your knowledge when was the first time the visitation was actually set?

[Appellant]. Probably -- to be honest, I don't know.

[Counsel for FCCS]. When was the first time you called in the hour ahead?

[Appellant]. I do know that after I had [N.B.], I could not go to visits as I was actually still healing. So, the first time I would have called in had to have been after [N.B.] was at least four months. So, that would be around December.

[Counsel for FCCS]. Okay.

JUDGE GILL: Is when the first time you called in for visits?

WITNESS: Yes.

[Counsel for FCCS]. And why couldn't you do that before?

[Appellant]. Covid, I'm still -- I'm still -

[Counsel for FCCS]. Oh.

[Appellant]. - terrified and then having a newborn baby. Taking her out to her doctor appointments alone is enough for me so.

[Counsel for FCCS]. Okay. So, during that period, did you work at all?

[Appellant]. Yes. I had two jobs actually.

[Counsel for FCCS]. Okay. What were the two jobs that you did during -

[Appellant]. I was working at JCPenney and Bath & Body Works.

(Mar. 1, 2023 Tr. at 123-24.)

{¶ 27} Appellant's explanation for not visiting A.P. until December 2022 rings hollow given her admission that she was working two jobs in the retail setting on her return

to Ohio. Appellant also acknowledged that she made the trip from Utah to Ohio just days after giving birth to her youngest child N.B.

{¶ 28} In recommending PCC for A.P., Ellis expressed her concern about appellant's commitment to A.P.:

> [Counsel for FCCS]. Okay. Does it give you any type of concern about mom's missed visits?
>
> [Ellis]. I'm -- I was so concerned that mom went to [Utah] for a significant amount of time while were in the middle of this and missing all of that. I'm concerned that, you know, -- you know, if that did happen and it was an emergency the first phone call upon landing should have been I want to see my children again. You know, I'm -- I'm concerned about a lot -- a lot of that.

(Mar. 1, 2023 Tr. at 56.)

{¶ 29} The prolonged absence while appellant was in Utah demonstrates a lack of commitment to A.P. Appellant acknowledges she left the state of Ohio in April 2022 and did not visit A.P. again until December 2022, but she testified that she holds power of attorney for her ailing mother and felt it necessary to go to Utah to care for her for several months. She also maintained she informed FCCS she needed to be out of town and asked to see A.P. before she left, but that could not be set up in time.

{¶ 30} To the extent appellant claimed in her testimony that FCCS did not offer her telephone contact with A.P. while she was in Utah, a lack of commitment under R.C. 2151.414(E)(4) may be demonstrated by a failure of visitation alone. *In re Walker*, 3d Dist. No. 5-05-22, 2005-Ohio-6563, ¶ 10; *In re C.M.*, 8th Dist. No. 103704, 2016-Ohio-4568, ¶ 24. Thus, any alleged lack of effort on the part of FCCS to offer appellant telephone contact with A.P. is not dispositive to the analysis under R.C. 2151.414(E)(4). Moreover, the record does show that Ellis maintained some level of communication with appellant while she was in Utah to facilitate the placement of E.G. with his paternal grandmother in Nevada.

{¶ 31} Even if her mother's health could be considered a justifiable reason for appellant's failure to visit A.P. from May to August 2022, appellant did not visit A.P. until December 2022. Although appellant blames FCCS for taking her off the visitation schedule while she was in Utah and for the subsequent delays in resuming visitation, the record

shows that after appellant was placed back on the visitation schedule, she missed 6 of 13 scheduled visits.

{¶ 32} Webb testified that due to appellant's prolonged failure to visit A.P. and inconsistent visitation thereafter, FCCS has implemented special rules for appellant to alleviate unnecessary hardships on A.P. and her foster mother. Appellant must call at least one day prior to a scheduled visit to let the principals know if she intends to show up. According to Webb, appellant has frequently been a no-call/no-show for scheduled visits since she returned from Utah. Based on the evidence in the record, the trial court did not err when it determined appellant demonstrated a lack of commitment to A.P. by failing to visit her for nearly eight months.

{¶ 33} Appellant nevertheless claims by her seventh assignment of error that the trial court erred when it found appellant is unwilling or unable to secure adequate housing for A.P. We disagree.

{¶ 34} The trial court found that "the primary and prevailing concern is that [D.P.] and [appellant] have not demonstrated their individual (or joint) ability to maintain a safe, stable housing for any of their children, and in the instant [case], [A.P.]." (Apr. 3, 2023 Decision and Jgmt. Entry at 7.) The evidence admitted at trial overwhelmingly supports the trial court's findings. Indeed, the record shows that prior to the removal in March 2021, the home that appellant shared with D.P. was often observed to be unsafe and unsanitary. Ellis testified the problems she had observed in the home included inadequate or unusable plumbing, an infestation of flies, damage to the walls and furniture, unclean and unsanitary living space, and a lack of food. GAL Boller testified that they observed broken glass and dog feces on the floor of the home appellant shared with D.P. The record shows that even though these problems abated from time to time, the same problems persisted throughout the case. The record also reveals that caseworkers and the GAL were frequently denied access to appellant's home.

{¶ 35} Though appellant moved in with her brother at his fiancée's home in the Columbus area after returning from Utah in August 2022, FCCS was never able to complete a home inspection necessary to consider placing A.P. in the home. Appellant testified FCCS harassed her brother and his fiancée by repeatedly making unscheduled visits to the home, and that FCCS essentially forced her to move out.

{¶ 36} Appellant's testimony evidences her feelings of distrust and anger toward FCCS dating back to 2018. The trial court made the following observation about appellant's willingness to cooperate with FCCS throughout this case:

> Overall, it has been made clear throughout [appellant's] presentation to the Court in this matter and in companion cases, that she (and [D.P.]) strongly felt the agency, (with the exception of the first case worker assigned to their case), and later the Guardian ad Litem, were biased against her, did not provide reasonable efforts and in fact hindered her (their) ability to reunify with [A.P.] (and all of their children). While it is not unusual for parents' and child service agency's relationships to be fraught with discord, this case is notably particularly so. After a thorough review of the evidence in toto and careful observation of the witnesses as testimony was given herein, the Court finds that the agency, the case workers and the guardian ad litem used their best diligent efforts, reasonable case planning, including offering and/or providing linkage with services and supports, to assist these parents to remedy the problems that initially caused the placement of [A.P.] in foster care and [D.P.] and [appellant] by their own actions and inactions have failed continuously and repeatedly throughout the pendency of this action to substantially remedy the conditions that caused [A.P.] to be placed in foster care within a reasonable time. This is notable, including but not limited to, the parents' interactions and threats to the caseworker, refusal to maintain regular and ongoing contact with the caseworker(s), refusal to consistently provide information important to determination of his and her ability to provide for the child's basic needs and refusal to allow access to their home for purposes of determining suitability for the return of this child to their care.

(Apr. 3, 2023 Decision and Jgmt. Entry at 14-15.)

{¶ 37} The trial court's assessment of appellant is borne out by her own testimony. Though appellant denies telling Ellis she would "beat her ass," during a home visit, she admits raising her voice to Ellis and throwing Ellis out of her house on multiple occasions. (Mar. 6, 2023 Tr. at 45.) Appellant testified she did not believe her attitude toward Ellis was threatening, but she conceded that Ellis might see it that way. Appellant also admitted throwing GAL Boller out of her house on at least one occasion. Even though appellant testified she had a good working relationship with her prior case worker, Gloria Butler, she admitted throwing Butler out of her house on one occasion. Ellis testified that her

relationship with appellant was poor, and she recommended appellant undergo a psychological examination as part of the case plan. Webb testified that appellant's demeanor toward her was less than cordial.

{¶ 38} Appellant testified that after leaving her brother's fiancée's house, she stayed temporarily with friends and/or relatives before moving into a YMCA shelter on January 28, 2023. According to appellant, she was initially admitted to the Van Buren shelter in the "overflow program" from 8:00 p.m. to 8:00 a.m. (Feb. 27, 2023 Tr. at 39.) Because she was able to maintain stable employment, appellant became a "legal resident" of the shelter on February 17, 2023, which meant she had a relatively permanent spot in a dormitory with 20 other female residents. (Feb. 27, 2023 Tr. at 39.)

{¶ 39} Appellant claims the shelter will permit her to have children stay with her provided she can get space in the facility at another location. She also claims her name has been placed on a list of candidates for permanent housing pending landlord approval. She admitted, however, landlord approval is problematic due to her prior eviction in 2020. On this record, we cannot say the trial court erred when it found that appellant showed a lack of commitment to A.P. by conduct demonstrating an unwillingness to maintain suitable, stable housing for A.P.

{¶ 40} Appellant's failure to complete many of the case plan objectives is also evidence of her lack of commitment to A.P. Webb testified appellant has not completed the required AOD assessment or psychological assessment, she has not obtained stable housing free of hazards, and she has not completed random drug screens. As of the date of the PCC hearing, appellant had not yet executed a release for Webb to obtain relevant information from the shelter and she has refused to execute a release for relevant information from her parole officer.

{¶ 41} In our view, the weight of the evidence establishes appellant's lack of commitment toward A.P. by her failure to regularly support, visit, or communicate with her when able to do so, and by other actions showing an unwillingness to provide an adequate permanent home for A.P. Because clear and convincing evidence in the record supports the trial court's finding that the factor enumerated in R.C. 2151.414(E)(4) applies to A.P., the trial court was compelled to find, pursuant to R.C. 2151.414(B)(1)(a), A.P. could not be

placed with appellant within a reasonable time or should not be placed with appellant. *See E.B.*, 2017-Ohio-2672, at ¶ 28.

{¶ 42} For the foregoing reasons, we overrule appellant's seventh assignment of error.

### b. Alternative Factor Enumerated in R.C. 2151.414(E)(11)

{¶ 43} Even if we were to conclude the trial court erred when it found the factor enumerated in R.C. 2151.414(E)(4) applied to A.P., the trial court's finding that the factor enumerated in R.C. 2151.414(E)(11) applies to A.P. has not been challenged by appellant in an assignment of error or otherwise. R.C. 2151.414(E) provides in relevant part as follows:

> If the court determines, by clear and convincing evidence, * * * that *one or more of the following exist* as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
>
> * * *
>
> (11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant * * * and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

(Emphasis added.)

{¶ 44} Because appellant has not contested the finding under R.C. 2151.414(E)(11), the trial court was statutorily compelled to conclude, pursuant to R.C. 2151.414(B)(1)(a), that the child could not be placed with a parent within a reasonable time or should not be placed with a parent. *In re P.B.*, 9th Dist. No. 23276, 2006-Ohio-5419, ¶ 13 (parents' failure to challenge the trial court's finding under R.C. 2151.414(E)(11) compels the conclusion that the child cannot be placed with either parent within a reasonable time).

{¶ 45} Moreover, if the parent has had parental rights involuntarily terminated with respect to a sibling of the child, R.C. 2151.414(E)(11) places " 'the burden * * * on the parent to provide clear and convincing evidence to prove that he or she can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.' "

*In re N.J.*, 6th Dist. No. L-23-1114, 2023-Ohio-3190, ¶ 44, quoting *In re J.H.*, 8th Dist. No. 105055, 2017-Ohio-940, ¶ 22, citing *In re E.A.*, 9th Dist. No. 12CA0059-M, 2012-Ohio-5925, ¶ 14.

{¶ 46} There is no dispute that appellant's parental rights to two of A.P.'s siblings, A.J.P. and P.G., were involuntarily terminated by the trial court prior to the PCC hearing in this case, and that we subsequently affirmed the trial court's decision in *A.P. I*. Appellant has never claimed that she provided the trial court with clear and convincing evidence that she can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of A.P. Rather, appellant has argued that FCCS has failed to meet its burden of proof on numerous issues. Because the finding by the trial court that the factor enumerated in R.C. 2151.414(E)(11) applies to A.P. is both unchallenged by appellant and supported by the evidence in the record, the trial court did not err in concluding that A.P. cannot be placed with appellant within a reasonable time or should not be placed with appellant. *See E.B.* at ¶ 28. *See also In re V.W.*, 10th Dist. No. 21AP-437, 2022-Ohio-2487, ¶ 57 (unchallenged findings under R.C. 2151.414(E)(7) and (E)(11) compelled the trial court to conclude the child cannot be placed with either parent within a reasonable time or should not be placed with either parent); *P.B.* at ¶ 13 ("[T]he trial court's finding that P.B. could not be placed with either parent within a reasonable time or should not be placed with either parent is compelled by unchallenged findings pursuant to R.C. 2151.414(E).").

### c. Alternative Factors Under R.C. 2151.414(E)(1) and (2)

{¶ 47} In appellant's second and fifth assignments of error appellant challenges the trial court's finding that the factor enumerated in R.C. 2151.414(E)(2) applies to A.P., and in appellant's ninth assignment of error, appellant argues the trial court erred when it found that the factor enumerated in R.C. 2151.414(E)(1) applies to A.P.

{¶ 48} In our prior decision in this case, we noted that " '[a]n appellate court need not render an advisory opinion on a moot question or rule on a question of law that cannot affect matters at issue in a case.' " *A.P. II* at ¶ 29, quoting *In re C.C.*, 10th Dist. No. 04AP-883, 2005-Ohio-5163, ¶ 23. We further explained that " '[a]n appellate court is not required to * * * rule on a question of law that cannot affect matters at issue in a case' and, accordingly, may 'overrule * * * assigned error as moot.' " *Id.*, quoting *Bambeck v. Catholic Dioceses of Cleveland*, 8th Dist. No. 86894, 2006-Ohio-4883, ¶ 20.

**{¶ 49}** Having previously determined that the trial court did not err when it found the factors enumerated in R.C. 2151.414(E)(4) and (11) apply to A.P., the trial court was statutorily compelled to conclude, pursuant to R.C. 2151.414(B)(1)(a), that A.P. could not be placed with appellant within a reasonable time or should not be placed with appellant. *P.B.* at ¶ 13. Accordingly, any error by the trial court regarding the factors enumerated in R.C. 2151.414(E)(1) and (2) could not have prejudiced appellant. *E.B.* at ¶ 28.

**{¶ 50}** For the foregoing reasons, we overrule appellant's second, fifth, and ninth assignments of error.

### 2. Alternative Grounds for PCC Under R.C. 2151.414(B)(1)(b)

**{¶ 51}** In appellant's third assignment of error, appellant argues the trial court erred when it found that appellant abandoned A.P., because that finding is against the manifest weight of the evidence. The trial court found A.P. was abandoned as that term is used in R.C. 2151.011(C) which defines an abandoned child as follows:

> For the purposes of this chapter, a child shall be presumed abandoned when the parents of the child have *failed to visit or maintain contact* with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days.

(Emphasis added.)

**{¶ 52}** "R.C. 2151.011(C) does not contain a requirement of any particular 'intent' on behalf of the parent; rather, the provision defines 'abandonment' solely in terms of the time between contacts." *In re D.P.*, 10th Dist. No. 06AP-780, 2007-Ohio-1703, ¶ 7; *see also In re I.H.*, 10th Dist. No. 16AP-463, 2017-Ohio-815, ¶ 16; *In re B.B.H.*, 10th Dist. No. 14AP-882, 2015-Ohio-2347, ¶ 34; *A.E.*, 2008-Ohio-1375, at ¶ 26. R.C. 2151.011(C) creates a rebuttable presumption of abandonment when parents fail to have contact with the child for a period of 90-days. *D.P.* at ¶ 7.

**{¶ 53}** There is no dispute that appellant failed to visit A.P. from May of 2022 through December of 2022. Appellant acknowledges she left the state of Ohio in April 2022, but argues that "[s]he holds power of attorney for her ailing mother and felt it necessary to go to Utah to care for her for several months." (Appellant's Brief at 35.) The record also shows that when she returned from Utah in August 2022, she learned she had been taken off the visitors list pursuant to FCCS policy. Additionally, there was some delay

in resuming visitation occasioned by the change of the caseworker from Ellis to Webb in September 2022. Webb admitted that at least one of appellant's scheduled visits was cancelled due to a scheduling error by FCCS.

{¶ 54} Though we have concluded clear and convincing evidence shows appellant demonstrated a lack of effort regarding her visits with A.P., on this record, we are reluctant to conclude that appellant abandoned A.P. Nevertheless, having determined the trial court did not err in concluding the grounds for PCC listed in R.C. 2151.414(B)(1)(a) exist as to A.P., any error as to the alternative grounds listed in R.C. 2151.414(B)(1)(b) is harmless error. *E.B.* at ¶ 59; *Franklin*, 2006-Ohio-4841, at ¶ 16; *C.C.*, 2005-Ohio-5163, at ¶ 22-23. Accordingly, we overrule appellant's third assignment of error.

### 3. Alternative Grounds for PCC under R.C. 2151.414(B)(1)(e)

{¶ 55} In appellant's fourth assignment of error, appellant contends the trial court erred in finding that the grounds for PCC listed in R.C. 2151.414(B)(1)(e) exists as to A.P. FCCS has not responded to appellant's fourth assignment of error and has, therefore, conceded error. Because we have determined, however, that the trial court did not err in concluding the grounds listed in R.C. 2151.414(B)(1)(a) existed as to A.P., any error as to the alternative grounds for PCC under R.C. 2151.414(B)(1)(e) could not have prejudiced appellant. *See E.B.* at ¶ 59; *Franklin* at ¶ 16; *C.C.*, 2005-Ohio-5163, at ¶ 22-23.

{¶ 56} Appellant's fourth assignment of error is overruled.

## C. Appellant's Eighth Assignment of Error/Reasonable Efforts

{¶ 57} In appellant's eighth assignment of error, appellant contends the trial court erred in granting PCC because FCCS failed to make reasonable and diligent efforts to reunify the family.

{¶ 58} "R.C. 2151.419(A)(1) provides that, at specified hearings, the trial court must determine whether a public children services agency 'has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home.' " *A.P. I* at ¶ 16, quoting R.C. 2151.419(A)(1). This statute applies to "adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 41.

Because this statute makes no reference to a hearing on a permanent custody motion, it does not apply to motions for permanent custody brought pursuant to R.C. 2151.413, or to hearings held on such motions pursuant to R.C. 2151.414. *Id.*

{¶ 59} An agency may not, however, file a motion for permanent custody "[i]f reasonable efforts to return the child to the child's home are required under [R.C. 2151.419, and] the agency has not provided the services required by the case plan to the parents of the child or the child to ensure the safe return of the child to the child's home." R.C. 2151.413(D)(3)(b). "Consequently, '[i]f the agency has not established that reasonable efforts have been made prior to the hearing on a motion for permanent custody, then it must demonstrate such efforts at that time.' " *A.P. I* at ¶ 17, quoting *C.F.* at ¶ 43; *In re N.M.*, 10th Dist. No. 20AP-158, 2021-Ohio-2080, ¶ 58. "Conversely, if the trial court finds, prior to a permanent custody hearing, that the agency had made reasonable efforts to reunify the family during the child custody proceedings, it is unnecessary for the trial court to make a reasonable efforts finding in its permanent custody decision." *Id.*, citing *In re J.H.*, 10th Dist. No. 19AP-517, 2021-Ohio-807, ¶ 65.

{¶ 60} R.C. 2151.419(A)(2) sets forth the following exception to the reasonable efforts requirement:

> If any of the following apply, the court shall make a determination that the agency is not required to make reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the child's home, and return the child to the child's home:
>
> * * *
>
> (e) *The parent from whom the child was removed has had parental rights involuntarily terminated with respect to a sibling of the child* pursuant to section 2151.353, 2151.414, or 2151.415 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections.

(Emphasis added.)

{¶ 61} As previously noted, FCCS has been awarded permanent custody of two of A.P.'s siblings. *See A.P. I.* Thus, the trial court was not required to make a finding, in the

context of this PCC proceeding, that FCCS had exercised reasonable efforts to return A.P. to appellant.

{¶ 62} The trial court nevertheless made extensive findings regarding the efforts made by FCCS to reunite appellant with A.P. The trial court also noted in the April 3, 2023 decision and judgment entry that "the agency's reasonable efforts have been unchallenged findings of this Court on several prior occasions." (Apr. 3, 2023 Decision and Jgmt. Entry at 6.) *See* (Oct. 4, 2021 Decision and Jgmt. Entry at 5), (Dec. 13, 2021 Jgmt. Entry, adopting Mag.'s Decision at 2).

{¶ 63} We note that appellant's primary complaint about FCCS is that FCCS failed to provide cash assistance to appellant so she could pay her rent. Webb testified, however, that she was unaware of any such program beyond the provision of bus passes and gas cards, both of which have been made available to appellant. Moreover, appellant has acknowledged that her current difficulty in finding a suitable rental home stems from her prior eviction rather than a lack of funds. Webb testified that appellant's willingness and ability to find verifiable employment has been one of the case plan objectives that appellant has satisfied.

{¶ 64} For the foregoing reasons, appellant's eighth assignment of error is overruled.

## D. Appellant's First Assignment of Error/Drug Testing and Due Process

{¶ 65} In appellant's first assignment of error, appellant argues the trial court failed to provide parents with all appropriate constitutional and procedural rights during this proceeding from its inception. More particularly, appellant claims that FCCS violated her constitutional and statutory rights when it ordered her to undergo periodic drug screening.

{¶ 66} The argument appellant makes in her first assignment of error was previously considered and rejected by this court in *A.P. II*. In that case, appellant appealed from a decision and judgment entry overruling appellant's objection to a magistrate's decision granting TCC of A.P. to FCCS. In that case, appellant assigned the following error:

> I. THE TRIAL COURT ERRED IN ORDERING ENDLESS DRUG TESTING OF MOTHER IN VIOLATION OF THE 4th AND 14TH AMENDMENTS TO THE CONSTITUTION.

II. THE TRIAL COURT ERRED IN ORDERING ENDLESS DRUG TESTING OF MOTHER IN VIOLATION OF CHAPTER 2151 OF THE REVISED CODE.

III. THE TRIAL COURT ERRED IN GRANTING TEMPORARY CUSTODY TO THE AGENCY BASED UPON REFUSAL TO DRUG TEST.

(Emphasis sic.) *A.P. II* at ¶ 22.

{¶ 67} Our decision in *A.P. II* recognized that procedural irregularities in appellant's merit brief provided this court with alternative grounds to affirm the order appealed from. We nevertheless undertook a substantive review of the drug testing requirements imposed by the trial court and determined that no reversible error occurred. *Id.* at ¶ 32-33. The law of the case doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels. *Nolan v. Nolan*, 11 Ohio St.3d 1, 5 (1984).

{¶ 68} Moreover, as is evident from our analysis of this appeal, appellant's objections to drug screening requirements of the case plan and her subsequent refusal to submit to drug screenings was of little consequence either to our assessment of the relevant evidence admitted at the PCC trial or our conclusions regarding the trial court's PCC determination.

{¶ 69} For the foregoing reasons, appellant's first assignment of error is overruled.

**E. Sixth Assignment of Error**

{¶ 70} In appellant's sixth assignment of error, appellant challenges the trial court's finding that appellant was convicted of a lesser-include offense of domestic violence. According to appellant, this finding is erroneous, and evidences a bias or prejudice against appellant on the part of the trial court.

{¶ 71} The trial court's decision and judgment entry contains the following statement: "[appellant] was criminally charge and ultimately pled to a lesser domestic violence charge in 2020." (Apr. 3, 2023 Decision and Jgmt. Entry at 12.) Appellant argues she pled guilty and was convicted of malicious mischief, which is not a lesser-included offense of domestic violence. The July 21, 2021 complaint corroborates appellant's claim that she was charged with domestic violence, but she pled guilty to malicious mischief. We

note, however, appellant testified at trial that she was on probation for the offense of domestic violence. *See* (Feb. 27, 2023 Tr. at 42.).

**{¶ 72}** In our view, the significance of the trial court's finding is the acknowledgement that appellant was *not* convicted of domestic violence. Under the circumstances of this case, we cannot say that appellant was prejudiced by this relatively minor error in the trial court's decision and judgment entry. Appellant's sixth assignment of error is overruled.

## V. CONCLUSION

**{¶ 73}** Having overruled appellant's nine assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

*Judgment affirmed.*

LUPER SCHUSTER, J., concurs.
DORRIAN, J., concurs.


DORRIAN, J., concurring.

**{¶ 74}** As the majority notes, appellant has challenged some but not all of the trial court's predicate findings under R.C. 2151.414(E). In the third assignment of error, appellant challenged the trial court's finding under R.C. 2151.414(E)(10) that the child was abandoned. R.C. 2151.414(E)(7) through (11) must be considered pursuant to R.C. 2151.414(D)(5) when determining best interest. In determining best interest, the trial court expressly noted its finding that the child was abandoned pursuant to R.C. 2151.414(E)(10). Therefore, I would construe appellant's third assignment of error as challenging the trial court's determination as to best interest. In addition, because appellant challenged the trial court's finding that the child was abandoned, I would find appellant challenged the trial court's finding at R.C. 2151.414(B)(1)(b).

**{¶ 75}** Furthermore, in the first assignment of error, appellant challenged the trial court's finding under R.C. 2151.414(E)(1) regarding failure to remedy; in the second and fifth assignments of error, appellant challenged the trial court's findings under R.C. 2151.414(E)(2) regarding chemical dependency and mental illness; in the fourth assignment of error, appellant challenged the trial court's finding under R.C.

2151.414(E)(11) regarding prior involuntary terminations of parental rights; and in the seventh assignment of error, appellant challenged the trial court's finding under R.C. 2151.414(E)(4) regarding failure to regularly support and unwillingness to provide adequate permanent housing. Because R.C. 2151.414(E) requires consideration of all these factors when determining whether the child cannot or should not be placed with a parent within a reasonable time, I would construe these assignments of error to challenge the trial court's conclusion that A.P. cannot or should not be placed with appellant.

{¶ 76} Nevertheless, although the majority concludes that no challenges were made to the best interest determination and the child cannot or should not be placed with appellant determination, the majority addressed the merits of appellant's arguments with regard to the R.C. 2151.414(E) factors challenged. Therefore, the relevant challenges to best interest and that the child cannot or should not be placed with appellant have been addressed. I agree with the majority's analysis.

{¶ 77} Accordingly, I concur with the majority and would affirm the trial court's judgment.

_____